WILLIAM FOLLINS, administrator, *vs.* GEORGE A. DILL, trustee.

Suffolk.    November 9, 1917. — February 25, 1918.    .

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Practice, Civil,* Amendment of docket entries, Exceptions. *Negligence,* Of one controlling real estate. *Elevator. Landlord and Tenant. Agency,* Scope of authority. *Custom. Contract,* In writing. *Evidence,* Extrinsic affecting writings.

A trial judge has power to order the correction of the docket record by the entering *nunc pro tunc* of an order previously made by the court, which through inadvertence had not been entered on the docket by the clerk.

The third floor of a building was leased to one whose business caused the accumulation of much waste paper, which this lessee gave to any one who would come there and take it away. There was a freight elevator in the building and there also was a passenger elevator which was operated to this floor. The lease of this lessee contained a provision that, "The lessee agrees to use the freight elevator for freight purposes only and will allow no person to ride on the same." A man who was sent there with a large bag to get waste paper found that there was not waste paper enough to fill his bag and, leaving the bag to be filled on another day, started without it to go down from the third floor by the freight elevator. The elevator was not at that floor, the gate was up and he fell down the well, sustaining injuries that caused his death. In an action by the administrator of his estate against the owner of the building, who was the lessor in the lease mentioned above, for the conscious suffering and death of the plaintiff's intestate, it was *held* that the plaintiff's intestate, who could have no greater rights than the lessee under whose implied invitation he came upon the premises, had no right to use the freight elevator for his own transportation, so that the intestate was at most a licensee and the plaintiff could not recover.

In the case described above the plaintiff contended that the defendant had waived the requirement of the covenant by permitting lessees and their invitees to use the freight elevator for the transportation of passengers unaccompanied by freight. There was evidence that the lessee and other lessees in the building having similar leases violated the covenant, and it could have been found that the janitor of the building knew what was going on and did not remonstrate, but there was no evidence that the janitor had any authority to modify the provisions of the lease and no evidence that the defendant had any knowledge of the violation of the covenant. *Held,* that the implied acquiescence of the janitor did not bind the defendant.

In the same case the plaintiff contended that the requirement of the lease had been abrogated by a custom or usage of the tenants, of which the defendant

should have known, but it did not appear that such a custom or usage existed when the lease was made, and it was *held,* that, even if such a custom had been shown to have been in existence when the lease was made, oral evidence in regard to it could have no effect to contradict the clear and unambiguous covenant of the lease in writing.

TORT by the administrator of the estate of Richard I. Follins, late of Boston, for causing the conscious suffering and death of the plaintiff's intestate by injuries received by him on November 2, 1911, from falling down the well of a freight elevator in a building owned by the defendant, as trustee, on Eliot Street in Boston and leased to different tenants for stores and mercantile purposes. Writ dated December 28, 1911.

In the Superior Court the case was tried before *White,* J.  The essential part of the evidence is described in the opinion.  In 1911 the third floor of the building was leased to Joseph Aronson. The only provision in his lease material to the questions raised by the bill of exceptions was as follows: "The lessee agrees to use the freight elevator for freight purposes only and will allow no person to ride on the same."  There was in the building a passenger elevator which operated to the floor in question.  All other portions of the building were let to other tenants by leases of substantially the same effect as that to Aronson.

One Cook, a witness for the plaintiff, testified that he and the intestate were working for the American Paper Stock Company and that he was with the intestate at the time of the accident; that they took two empty bags and went by means of the freight elevator to the third floor occupied by Aronson to get waste paper. He described the accident as follows: "We went in and he [Follins, the intestate] opened the fire doors and walked in, and he was accustomed to the place and he went around to where the paper was kept.  I followed him, and he looked at the bag and it was about a quarter full, and he shouted across the room to somebody and asked them is that all they had, and they said yes, and he said it ain't worth taking today, and somebody in there — I don't know who it was — told him he better let it go for a couple of days, so he said we will leave a couple of empty bags anyway in case you might need them; then we turned round and started out, Follins leading.  Follins started for the elevator door and I followed him round.  He had to go round the fire door where

the fire door opened, the paper was kept in back of it in one corner, and to get out again you had to come out and round the door and I was about four or five feet behind him, it was kind of dark there, and he walked along and me right after him, and the first thing I see the gate came down in front of me and I looked over and Follins was down the well. . . . When we left the elevator, the gate was up with the elevator there. It was a day we had snow fall and pretty dark."

At the close of the evidence the defendant filed a motion asking the judge to order a verdict for the defendant. The judge denied this motion and submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $6,000, of which they assessed $1,000 for conscious suffering and $5,000 for causing death. The defendant alleged exceptions, which were allowed after *Lawton*, J., in the absence of *White*, J., had caused the docket entries to be corrected by an amendment showing that the time for filing exceptions had been extended previously by *White*, J. The motion for the extension of time had been handed to the clerk of court at the time it was allowed but through inadvertence had not been entered on the docket. The defendant excepted to the order of *Lawton*, J., amending the record of the docket entries.

*C. S. Knowles*, for the defendant.

*W. J. Patron*, for the plaintiff.

BRALEY, J. The trial court had power to vacate the order dismissing the exceptions, and thereupon to amend its docket in conformity with previous orders extending the time for filing exceptions, but which through inadvertence had not been docketed. *Dalton-Ingersoll Co.* v. *Fiske*, 175 Mass. 15. Having been filed seasonably and allowed, the defendant's exceptions under the amended record are properly before us.

The jury could find that by falling or walking into the unguarded well of an elevator, designed for the transportation of freight, the plaintiff's intestate, while in the exercise of due care, suffered the injuries which after a period of conscious suffering caused his death, and that the accident would not have occurred if the operating equipment had been in proper repair. *Follins* v. *Dill*, 221 Mass. 93.

The plaintiff however cannot recover unless the defendant had undertaken the duty of maintaining the elevator in a reasonably

safe condition for the intestate's use. He went to the building to get waste paper from the third floor leased to one Aronson, who for his own benefit and to be relieved from accumulating rubbish gave the paper, as the jury could find, to any one who would come there and take it away. By the terms of the lease, the lessee "agrees to use the freight elevator for freight purposes only and will allow no person to ride on the same," and the intestate was not clothed with any greater rights than the lessee under whose implied invitation he came upon the premises. *Baum* v. *Ahlborn,* 210 Mass. 336, 338. It is certain from his own declarations as testified to by his sister, and the evidence of his companion, the only witness of the accident, that when injured he was not intending to use the elevator for freight, as sufficient waste paper to fill the bags he took with him but left in the room had not accumulated, and when he started for the elevator his purpose was to use it only as a means of transit to the street floor. But, its use under such circumstances having been prohibited by the covenant, the intestate at most was a licensee, and the defendant's request for a directed verdict should have been granted. *Billows* v. *Moors,* 162 Mass. 42.

The plaintiff in avoidance of this conclusion relies on evidence from which he maintains that, while this provision had not been expressly annulled, the jury could find that it had been waived by permitting lessees and their invitees to use the elevator for the transportation of passengers when unaccompanied by freight. The covenant being for his benefit, the lessor doubtless could waive it, and waiver may be proved by conduct as well as by the declarations of the party against whom the intentional relinquishment of a known right is asserted. *Chace's Patent Elevator Co.* v. *Boston Tow-Boat Co.* 155 Mass. 211. *Stone* v. *St. Louis Stamping Co.* 155 Mass. 267. *Brownville Maine Slate Co.* v. *Hill,* 175 Mass. 532.

It is a question of fact if there is any evidence which warrants the finding. *McNeil* v. *American Bridge Co.* 196 Mass. 56. *Wood* v. *Blanchard,* 212 Mass. 53. But a full examination of the record reveals no dealings between the defendant and the intestate or knowledge by the defendant, even if the jury disbelieved his evidence, that the lessee repeatedly violated this covenant or that other tenants occupying under similar leases regarded it as being more honored in the breach than the observance. While

the janitor could be found to have known of what was going on, and did not remonstrate, he is not shown to have been authorized to modify the lease, and his implied acquiescence did not bind the defendant. The further argument, that the lease had been abrogated by custom or usage of which the defendant should have known because of its long continuance, fails to point out how the undisputed terms of a contract can be transformed or eliminated by proof of a custom or usage which comes into existence after the contract has become binding and is being performed. If urged upon the ground, that the custom or usage had been established when the lease was made and that the parties must be presumed to have contracted accordingly, the covenant is reduced to a mere collocation of ineffective words. It purports on its face to be an unambiguous instrument. The alleged countervailing custom when read in, leaves the lease as if the covenant had not been inserted. It has long been settled that a lease cannot be overridden thus and the parties' rights thereunder destroyed by parol evidence. *Shute* v. *Bills*, 191 Mass. 433, 438. *DeFriest* v. *Bradley*, 192 Mass. 346, 353. *Barrie* v. *Quinby*, 206 Mass. 259, 264, 265.

The exceptions must be sustained, and, it being sufficiently plain after two full trials on the merits that the plaintiff cannot prevail, judgment for the defendant should be entered in accordance with St. 1909, c. 236.

*So ordered.*