WISCONSIN AUTO SALES COMPANY, Respondent, vs. FRINT MOTOR CAR COMPANY, Appellant.

*February 8—March 6, 1923.*

*Contracts: Waiver of requirements: Conduct of parties: Evidence as to situations under previous contracts: Sufficiency.*

1. Where a contract is plain and definite and no oral evidence is required to properly understand and apply it, evidence that under similar contracts in the past one of the parties may have been willing to waive compliance with the plain letter of such similar contracts was not proper in an action on the present contract to prove or tend to prove waiver of its provisions; but in this case error in receiving such evidence is not prejudicial, as there is ample competent testimony to support the findings of the trial court.

2. A dealer in automobiles brought an action against a state distributor to recover an additional discount provided in a contract in case the dealer purchased a designated number of cars and fully complied with the conditions of selling contracts which required him to furnish the distributor, on or before the 25th of each month, shipping or delivery instructions for automobiles scheduled for delivery the following month. Where it was shown that such instruction was not required to be in writing and that the distributor had the right to deliver without being so instructed, and there was no showing of actual damage to the distributor, and, although estimating requirements for winter months was of great importance, no stress was laid thereon in the contract, this court cannot say that the finding of the trial court that defendant waived strict compliance with the requirement of the contract was unwarranted or unreasonable.

APPEAL from a judgment of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

The defendant corporation is and was the state distributor or manufacturer's agent of Oldsmobile auto cars and trucks.

Prior to July, 1919, the defendant had written selling contracts as such distributor with a copartnership known as the Theresa Auto Company within certain specified territory in Wisconsin. Some time after July 15, 1919, three written

contracts were made between such copartnership and the defendant, but as of such day, and were to continue for a period of one year, but were subsequently extended by mutual consent for an additional month. The plaintiff corporation was organized by those who had been members of such copartnership and then succeeded to all the rights under said written contracts and was thereafter recognized as such successor.

In all such contracts the defendant was referred to as distributor and the plaintiff's predecessor as the dealer. One of such contracts provided for the sale of automobiles and the other for auto trucks. The first contained, among other provisions, as follows:

"The distributor agrees: to sell the dealer Oldsmobile automobiles, terms sight draft with bill of lading attached (with collection charges) f. o. b. Lansing, Michigan, hereinafter described by number, at the following discounts from list prices hereinafter mentioned: . . . at which price all Oldsmobile automobiles shipped under this agreement will be billed."

Then followed a list of eight different models or types of automobiles with the respective list price, billing price to the dealer, and additional war tax, all separately specified. There also appeared in a separate column for each of the twelve months under the heading "Estimated requirements" and following each of the several models or types, a specified number for each month, with a column for the totals for the year of 102 cars. Then followed seventeen or more different provisions and conditions of which four only are material. For convenience the sixth and most material is inserted in the opinion and the others read as follows:

"Ninth. That there are no verbal agreements or understandings affecting this contract between the parties hereto; and that no alterations or variations of the terms thereof shall be valid, or binding upon the distributor, unless made in writing and signed by the distributor.

"Tenth. That the failure of the distributor at any time to require performance by the dealer of any provisions hereof shall in no way affect its right thereafter to enforce the same, nor shall the waiver by the distributor of any breach of any provision hereof be taken or held to be a waiver of any succeeding breach of such provision or as a waiver of the provision itself.

"Eleventh. It is understood that this is a general form of contract, designed for use in foreign countries as well as in the United States of America, wherever the distributor may desire to sell automobiles, . . . and that any provisions herein which in anywise contravene the laws of any country, state, or jurisdiction shall be deemed not to be a part of this contract therein."

The second or truck contract contained a list of three types or models with estimated requirements in the same form as that of the automobile contract, with a total estimated requirement of thirty-three of such trucks and with similar material conditions.

The third written contract was headed "Additional Discount Agreement," the material part of which is as follows:

"For the purpose of encouraging and stimulating the sale of Oldsmobile passenger cars and Oldsmobile Economy trucks and as an additional compensation, and in consideration of an agreement, dated July 15, 1919, covering the sale of Oldsmobile passenger cars, and another agreement dated July 15, 1919, covering the sale of Oldsmobile Economy trucks, *providing the dealer fully complies with all the terms and conditions contained in said agreements,* the distributor will, at the termination of said agreements, compute the maximum number of Oldsmobile passenger cars and Oldsmobile trucks paid for during the life of said agreements, and will credit the account or pay to the dealer an additional discount from net invoice price excluding war tax, according to the following scale: . . .

"100 (or over) Oldsmobile passenger cars and trucks, 5 %."

"The distributor and dealer mutually agree that this agreement will be terminated by the cancellation of either

the said passenger-car agreement or the said truck agreement, or will expire by limitation on June 30, 1920."

On December 12, 1919, the defendant wrote plaintiff stating that it would not feel responsible for *nondelivery of cars* in any month where it did not have on hand on the 1st shipping instructions covering the allotment for the next thirty days, and asking for co-operation on plaintiff's part in seeing to it that the specifications are furnished. By bulletin of December 17th attention was called to the fact that defendant would not be allowed for ten days at least to ship any automobiles, owing to traffic conditions, specific reference made to the paragraph No. 6 here involved, and that plaintiff was supposed to have its specifications for cars in the hands of the distributor by December 25th for its allotment of cars to be taken in January, and suggesting that it would be advisable for plaintiff to get its orders into defendant's hands immediately so that it would be in a position to take care of plaintiff on its allotment for the winter, as this will determine whether or not it is to get additional discount on the cars it takes.

On December 31st, by a general bulletin to plaintiff and other dealers, any penalty as to December allotment was expressly waived, and then continued that it would ask every dealer to co-operate with it for the winter months of January, February, and March, and referring to the provision of the contract as to the furnishing of specifications by the 25th of the month, that in some cases dealers may be asked to pay for cars in transit in order for defendant to give it its contract allotment, that defendant would do everything in its power to help the dealers, but will ask strict compliance with the terms of the contract in such respect; such compliance will help the dealer and the defendant.

On January 31, 1920, and subsequent of course to the period at which, under the literal terms of the contract,

plaintiff's shipping instructions for February should have been received, the defendant writes: "We are not writing or talking to any of your sub-dealers at the present time on their February allotment and are going to ask you to *immediately take up with them* the question of February deliveries. *We will be able, I believe,* to give you your allotment for February, which, according to our records, consists of" (here follows a reference to the estimated requirements of the written contracts). The letter also states that defendant thought it could furnish a few additional cars and trucks, but that it was absolutely necessary that defendant have plaintiff's instructions by return mail as to how plaintiff wanted these cars and where they were to go, and requests plaintiff to take it up with *plaintiff's sub-dealers at once* and to report to it how many additional cars would be needed, and in the meantime to give directions on its allotment.

On February 12th plaintiff wrote to defendant that it had conferred with its sub-dealers and that for reasons there stated it could not take any more. This was acknowledged by letter of February 18th stating as follows:

"At the present time we have no order of any kind from you or your sub-dealers, and of course this makes it very bad, for had we had orders from you on or about the 25th of January covering your February allotment, we surely would have been able to have given you what you needed. We are sure there will be a controversy over the lost discount, but you will realize in every case we have made a tremendous effort to get the dealers to supply us with their orders, and in cases where they have not and cars are not taken, the regular eighteen and twenty per cent. discount will apply throughout the year."

Later on in February, at a meeting in Milwaukee, Mr. Haessly gave defendant instructions recognized by letter from defendant of March 5th stating as follows: "When Mr. Haessly was down here he told us that he wanted us to

put in storage for you and draw on you for anything that we could get until the roads open up." March 9, 1920, defendant wrote plaintiff as follows:

*"This letter is very important.*

"We have been struggling along trying to fill our contract allotment with you, and where we have fallen down we want you to know the reason.

"Sometimes things are impossible to do, and we truly believe that the Olds Motor Works have been up against just this situation in the last three or four months, which of course put us in almost the same condition. In fact, would have seriously hampered us had we not put forth superhuman effort to buy cars from the factory and then get them home. For allow us to say, that we have had no shipments of Oldsmobile passenger cars. Every one we have received has been driven, and right here we want to thank those dealers who helped us drive, and we assure them that we shall not forget it in spring-time. Allow us to say further, that we will have plenty of chance to show our appreciation because we are facing one of the greatest automobile shortages ever known.

"Now for a few facts: The Olds Motor Works schedule called for in February:          They manufactured

| 1,000—45/B Eights. | 378 |
| 2,500—37 Sixes. | 1,274 |
| 250—37/B Coupés. | 18 |
| 300—37/A Sedans. | 45 |

"From July 1st to March 1st their schedule called for 761 Model 45/B Sedans. They built 94.

"They are doing all that is humanly possible to increase and build cars, but such things as fires, coal strikes, steel shortage, railroad shortages, etc., are all beyond their control.

"What are we Wisconsin and Upper Michigan dealers doing to get our share of this small production? Every one of us should have orders far in advance—then be ready to go and do our bit of the driving that some one must do. Also, we must sell trucks in order to keep up or increase our sales, and now is the time to get them, not after the weather and roads are settled and no distributor or dealer

Wisconsin Auto Sales Co. v. Frint M. C. Co. 180 Wis. 137.

can supply the demand. Prepare now for that time—have some in storage in Milwaukee, Lansing, or at home. They will prove exceptional property.

"We have constantly had men at Lansing buying—buying everything we could get, and now we need you to help us get them home and to help us distribute the quantity of trucks we have and will be able to get. You are a part of our organization and we do not hesitate to call on you, for we know you will in thirty days be calling on us for favors. 'God helps those who help themselves,' and we shall have to apply this rule from now on.

"Now! Answer this letter at once and tell us what we may expect from you the balance of March. Don't be afraid to overshoot, especially on trucks—you will need them very shortly."

No claim is made of any default by plaintiff from March on, and on April 14th defendant gave notice that the factory was closed indefinitely on account of strikes, shortage of material, etc.

At the end of the contract period new contracts were made. Defendant furnished from its records to plaintiff itemized lists, headed "Rebates from July 1, 1919, to July 31, 1920," of the cars and trucks sold by plaintiff and its sub-agents; these lists were corrected and substantially added to by plaintiff and such corrections acknowledged as correct.

Upon plaintiff insisting on the additional discount under the "Additional Discount Agreement," *supra,* defendant denied liability and, under a clause so permitting, canceled the new agreement.

During the period of said contracts as extended the plaintiff sold in the aggregate 120 cars and trucks for which it paid defendant an aggregate price of $163,487, and upon such sales as made it received the dealer's discount as provided for in the first and second of said contracts.

The case was tried by the court without a jury, and the court made his findings of facts, none of which are ques-

tioned here other than as embodied in the seventh, which reads as follows:

"7. The plaintiff did not in every case give definite shipping orders before the 25th of the month for delivery of cars desired during the following month, as provided by paragraph 6th of Exhibits 1 and 2 [*i. e.* the automobile and truck contracts of July, 1919, *supra*]; but by a course of dealing between the parties during said year *and for several years prior, under contracts containing the same provision,* it was the custom of Mr. Haessly, the principal officer of the plaintiff, to call personally at defendant's office in Milwaukee two or three times during the month and there inform the defendant of plaintiff's needs and requirements; and it was the general custom during said year and all said period for plaintiff to receive and defendant to make delivery of cars purchased by plaintiff at defendant's Milwaukee place of business. And defendant suffered no injury in any case by non-receipt of definite shipping orders before the 25th of the month, and waived strict compliance with said paragraph 6th."

Upon his findings the trial court directed judgment against the defendant for the sum of $8,174.35, the additional discount, with interest thereon from August 1, 1920, at six per cent., making a total of $8,975.40, with costs. From the judgment entered in accordance therewith the defendant has appealed.

For the appellant there was a brief by *Upham, Black, Russell & Richardson* of Milwaukee and *Duffy & McGalloway* of Fond du Lac, and oral argument by *F. Ryan Duffy* and by *C. W. Reeder* of Milwaukee.

*T. L. Doyle* of Fond du Lac, for the respondent.

Eschweiler, J.    The court found and there is no dispute that plaintiff failed to give written or formal shipping or delivery directions on or before the 25th of each month for the quantity of cars or trucks that plaintiff could or would take during the succeeding month; the substantial

question here presented being whether or not the trial court was justified in finding that, by the course of dealing between the parties, there was a waiver by defendant of any failure by plaintiff to comply with the sixth clause, hereinafter set forth, of the two selling contracts.

In arriving at the conclusion that there was such waiver the trial court expressly based it in part upon the course of conduct between the copartnership, plaintiff's predecessor, and the defendant under similar written contracts preceding the ones of July, 1919. Such testimony was, we think, improperly received over defendant's objection. No issue was here presented as to the construction of the language of the contracts in the several provisions considered, for such provisions are plain and definite and oral evidence was not needed that they might be properly understood and applied. That under similar written contracts one party or the other thereto may have been willing to waive compliance with the plain letter of such prior or other contracts is not proper evidence in an action upon a present written contract to prove or tend to prove waiver of the express and plain provisions of such present contract. Proof of waiver here should therefore have been confined to only the conduct of the parties under the contracts here involved. *State ex rel. News Pub. Co. v. Park,* 166 Wis. 386, 165 N. W. 289; *Follins v. Dill,* 229 Mass. 321, 118 N. E. 644. We cannot deem such error, however, prejudicial in view of the fact that we find ample support in the testimony as to the conduct of the parties under the particular contracts here involved to support the trial court's conclusion.

The material provision in the auto and truck contracts, default as to which is relied upon by defendant as preventing plaintiff's right to recover the additional discount, reads as follows:

"Sixth. That the dealer will furnish the distributor *on or before the twenty-fifth of each month definite shipping or*

*delivery instructions for the automobiles scheduled for the following month.* In case instructions *are not so furnished,* the distributor *may make* shipment of the automobiles *scheduled* for said month, or any portion thereof, to the dealer's home place of business in any manner the distributor may elect. That all orders shall be filled by the distributor as rapidly as practicable, consistent with the estimated requirements given the distributor by the dealer, subject, however, to delays caused by strikes, fires, transportation difficulties, the requirements of other customers, or any other cause beyond the distributor's control; and that the distributor, shall, not be liable for any loss or damage from its failure to deliver goods as ordered."

In considering this provision it should be noted:

First, that it does not expressly specify that the required notice shall be in writing, although plaintiff's president, Mr. Haessly, who conducted most of the transactions between the parties, admitted in his testimony that he assumed that it did refer to written notices.

Second, that it expressly gives to defendant the absolute right to deliver, and of course hold the plaintiff liable for payment therefor, the number of cars or trucks specified for each month. No claim is or can be made by defendant that plaintiff was under obligation to order or be compelled to take more than the agreed estimate for any particular month.

Third, that although it was in effect conceded by plaintiff that the requirement as to ordering the particular estimated number of cars for the months of December, January, February, and March was, on account of the nature of the automobile business in this part of the country, of greater practical importance to the defendant than during the other months, yet such particular importance is not to be found in the letter of the contract.

And finally, the express purpose of the additional discount agreement is to encourage and stimulate the sale of the cars and trucks during the life of the two sales contracts, that

is, as a whole period and not for any particular part thereof, and it is found as a fact that there was a substantial compliance by plaintiff with the terms of the sales contract so far as the total number of cars and trucks is concerned.

While it is quite true that by some of the formal bulletins and direct communications sent by defendant and appearing in the above statement of facts direct reference was made to this requirement of orders by the 25th of each month, yet when we consider the entire course of dealing between the parties during the life of the contracts we cannot say that the conclusion of the trial court was unwarranted or unreasonable. So far as that the notice should be in writing, that was clearly waived by the continuous conduct of the defendant during the entire year. For the month of December, 1919, defendant expressly waived any question of breach by reason of its own inability to furnish cars or trucks. It appears that during the month of January the estimated requirements, in numbers at least, were taken by plaintiff. Defendant's letter of January 30th above quoted and written subsequent, it should be noted, to the time when, under the letter of the contract, the February requirements should have been placed with defendant, suggests that plaintiff ascertain from its recognized sub-agents or sub-dealers within its allotted territory what can be done for the month of February, and this is followed by a letter from plaintiff setting forth the situation that then confronted it and its sub-dealers and why it could not receive cars or trucks. If this was not satisfactory to defendant it had the right to nevertheless ship to plaintiff the allotted number, and in this connection should be noted defendant's letter of March 9th, *supra,* showing how very materially behind in its own schedule the factory was in this very month of February.

And finally there is the fact, which appeals to us strongly as ground for supporting the conclusion of the trial court,

that defendant was, in equity and fair dealing, waiving any possible right it might have had to rely upon any claim of breach, viz. that in February plaintiff ordered, and defendant accepted such order, as appears from its letter of March 5th, *supra,* the shipment to plaintiff of all cars that defendant could furnish and for which plaintiff would arrange to pay even though in storage. This order was evidently irrespective of the limitations as to the specified number of cars under the contract. Furthermore, not only is there no showing of actual damage to defendant by any failure by plaintiff to order or take cars or trucks during February, 1920, but by the letter of March 9th, set forth in the statement of facts, *supra,* the factory was materially behind in its own schedules for building, and evidently there was no overstocking at the plant, the substantial thing, under defendant's theory, this required prior ordering was aimed to prevent. So far, therefore, as the record here discloses, no injury resulted to defendant from any breach by plaintiff.

It is also without dispute that at the end of the contract a new contract between the parties was negotiated and executed and in the meantime a statement was prepared by defendant from its records for plaintiff's information as to the exact number of cars furnished to plaintiff and its subagents, and upon plaintiff's examination of the same and finding substantial omissions the corrections to such statement made by plaintiff were accepted and retained for a time by defendant, and these were made only for the purpose of ascertaining the amount of additional discount to which plaintiff made claim.

In view of the entire situation we are satisfied that the judgment is right and must be affirmed.

*By the Court.*—Judgment affirmed.