REUBEN WENTWORTH *vs.* MANHATTAN MARKET COMPANY & another.

Middlesex.    December 1, 1913. — January 9, 1914.

Present: RUGG, C. J., HAMMOND, BRALEY, & DE COURCY, JJ.

*Evidence*, Materiality, Extrinsic affecting writings. *Contract*, In writing. *Way*, Private. *Deed*, Construction. *Equity Pleading and Practice*, Master's report. *Equity Jurisdiction*, Specific performance.

In a suit in equity to enforce the specific performance of a contract in writing collateral to a lease of real estate between the same parties and relating to the erection by the lessee of a new building on the leased premises, evidence of a lease and agreement between other parties relating to adjacent land, which are not a part of the same transaction and are not incorporated by reference in the contract between the parties to the suit, should be excluded.

In a suit in equity by a lessor of real estate against his lessee to enforce the specific performance of a contract in writing collateral to the lease, relating to the erection by the defendant of a new building, and to enjoin the maintenance of a stable on the leased premises, evidence of conversations between the parties, which occurred before the execution of the lease and contract, relating to the proposed new building and to the use of the stable then on the premises, should be excluded.

The extrinsic evidence which is admissible to explain doubtful terms of an instrument in writing is evidence of the circumstances attending the transaction and not evidence of oral preliminary investigations.

On an appeal in a suit in equity from a decree affirming a master's report, where this court had before it all the testimony and exhibits on which the master made his findings and rulings, with the exception of a view taken by the master, which did not appear to be material upon the questions raised by the appeal in regard to the admissibility of evidence and the construction of instruments in writing, it was observed that no presumption affecting these questions was created by the findings of the master.

An agreement contained in a lease, by which the lessee "agrees to convey forthwith a right of way to said lessor fourteen feet in width from the easterly end of the lessor's land herein leased through to [a certain street] in fee," requires the conveyance of a right of way free from incumbrances and is not performed by the conveyance of a right of way subject to a mortgage.

In a suit in equity by the lessor of a parcel of land containing sixty-five hundred square feet, on which was a wooden building that covered eighteen hundred square feet of the land, against his lessee, to compel the specific performance of an alleged agreement of the defendant to erect a brick building on the land to replace the wooden one, or on top of which the old building should be placed, where it appeared that the plaintiff, acting under an honest mistaken belief that he was entitled to have the defendant build a new brick building over his entire lot, re-

fused to allow the defendant to erect a brick building such as the contract called for covering only the space occupied by the wooden building and that in consequence of such refusal the defendant had made other plans for carrying on his business so that he did not require the use of such a new building, it was *held* that it would be inequitable to compel the defendant to erect a building for which he no longer had any use owing to changed conditions that had been brought about through an honest difference of opinion of the parties as to one of the essential terms of the agreement, and that therefore the proper relief to be awarded was the payment of damages, which might be assessed by a master, and that, in lieu of the contemplated brick building as security for the rent, the plaintiff should be provided with an adequate bond.

DE COURCY, J.   This is a bill in equity seeking, among other things, to have the defendants ordered to specifically perform their agreement under a lease and written contract by erecting a building upon the leased premises, and by conveying in fee a certain right of way; and also asking that they be enjoined from maintaining a stable on the leased premises.   It is before this court on an appeal by the defendants from an interlocutory decree overruling exceptions to and confirming a master's report, and from the final decree.*   The report recites: "It was stipulated that the defendants, the Manhattan Market Company and the Manhattan Grocery and Provision Company, are allied corporations, and for the purpose of this report will be termed the defendant, and any decree entered affecting them is to run against both."   Accordingly we shall refer hereinafter to both and to each as the defendant.

The facts out of which the controversy arises are as follows: The defendant occupied for market purposes a building in Cambridge, the lease of which was about to expire.   It leased from the plaintiff for ten years from May 9, 1910, with the privilege of renewal, a lot of land containing about six thousand five hundred square feet, located in the rear of property known as Hyde's block, that belonged to one Corcoran.   There was on the leased land a three story wooden building thirty by sixty feet in size, the ground floor of which long had been used by the plaintiff as a stable before the erection of his four-story tenement block.   The parties also executed a collateral contract in writing, later referred to.   The

---

* The bill was filed in the Superior Court on July 19, 1912.   The final decree was made by *Morton,* J.   The interlocutory decree was made by *Hardy,* J.   The master was Burton Payne Gray, Esquire.

principal controversy in this litigation relates to the size and character of the new building that the defendant was to erect on the leased premises within two years from June 1, 1910.  The contention of the defendant is that it is required to erect a building of the size only of the existing stable; and this it offered to do within the required time.  The master has found, in accordance with the plaintiff's contention, that the brick building required by the lease and contract is to cover the entire leased premises; that it is to have under its entire length and breadth a basement of the depth and construction of the basement under the Hyde Block; and that it is to be one story high, with the old wooden building raised on top of it, or in lieu thereof a two story brick building.  The rent reserved in the lease was substantially $700 a year until the erection of the new building, when it was to be $2,500 a year.  The facts bearing on the right of way and on the use of the premises for stable purposes after June 1, 1912, will be referred to later.

First, as to the exceptions to the master's report.  In considering these we have before us, under the interlocutory decree of March 17, all the testimony and exhibits on which the master made his findings and rulings, with the exception of the view; and this does not seem material to the points now under review.  The exceptions, aside from the tenth, relate to the admissibility of evidence and the construction of written instruments, and raise only questions of law.

The first and second exceptions are to the admission in evidence of the Corcoran lease and agreement, and must be sustained. The plaintiff was not a party to them, they were not a part of the same transaction, nor are they embodied in the plaintiff's agreement by any reference therein.

Exceptions 3, 4 and 6 are to the admission of conversations between the parties, before the execution of the lease and contract, relating to the building proposed to be erected on the plaintiff's land and to the use of the stable.  In view of the fact that the papers were prepared by a skilled attorney, after many interviews and preliminary drafts, that according to the uncontradicted testimony they expressed the final conclusions of the parties and that the contract on its face is reasonably plain, it is not clear on what ground this testimony was admitted.  Even assuming the terms of the instrument in which the previous oral negotiations were

merged to be doubtful, the evidence admissible to clear up the doubt would be that of the circumstances attending the transaction, and not the conversations held in the course of the preliminary negotiations. It is apparent from a perusal of these that their natural tendency and probable effect upon the master was to vary by oral evidence the written agreement between the parties; and these exceptions must be sustained. *Jennings* v. *Puffer,* 203 Mass. 534. *Rochester Tumbler Works* v. *Mitchell Woodbury Co.* 215 Mass. 194.

The ninth exception to the report relates to the finding of the master as to the building required by the lease and contract, as hereinbefore set forth. The parties intended these writings to be the complete and final record of all the terms agreed upon between them with reference to this subject. It is from the lease and contract, and not from the earlier conversations in the course of their negotiations, nor from the provisions of the Corcoran agreement, that we must determine what kind of building these parties intended to provide for. Examining first the lease, we find that the $700 rental was to continue from June 1, 1910, to the time when the lessee "shall have extended or remodelled the present building or buildings now standing on the hereinbefore demised premises or shall have built a new building or buildings on the hereinbefore described land suitable for, and to be occupied by, the Lessee, its successors and assigns in carrying on its business. . . . Upon the completion of the said alterations or additions within said two years the said Lessee . . . shall then yield and pay for the premises hereinbefore described including said alterations and additions," the $2,500 rental. It further provides that at the expiration of the term or extension thereof the "Lessees or those representing them will complete any building constructed by the Lessees on the leased premises by putting in ends to such buildings of brick like that of the sides thereof as provided in the contract between the parties hereto." Finally it is agreed that "when the . . . premises shall have become vacated by the Lessee . . . any alteration or addition or new buildings made or erected by the Lessee . . . on the within demised premises shall become the property of the Lessor . . . without charge therefor." Clearly there is nothing here to compel the lessee to erect any new building, much less one that will cover the entire lot. On this subject

the contemporaneous contract provided as follows: "The party of the second part agrees to erect a brick building on the land of the party of the first part and raise the wooden building now on said land, one story by placing same on said one story brick building above agreed to be built and connect said brick building to be erected with said Corcoran's building, and if said party of the second part shall so desire, it may remove said wooden building and instead of raising the same the one story by placing the same on said brick building to be built, it may build said brick building two or more stories high instead, said construction, either way, to be done in a manner satisfactory to said Wentworth; and said party of the second part agrees that at the expiration of the said lease the new building so erected shall be finished in a manner to the reasonable satisfaction of the said Wentworth or those having his estate, by completing the ends of said building. . . . And the party of the second part agrees to make, at its own expense, all erections, changes and connections of the building now on Wentworth's land and any new ones erected thereon with said Corcoran's building and to make whatever repairs and changes it may require in the conduct of its business during the term set forth in the said lease, and agrees at the expiration of said lease to make any building built on said Wentworth's land complete by putting in suitable ends in the same of brick like the building itself, if the said Wentworth or those having his estate shall so desire, at its own expense and charge, and all such buildings shall be and become the property of said Wentworth at the expiration of said lease without charge." In this connection it is to be noted that "the wooden building referred to in the plaintiff's lease and agreement means the main structure 30 x 60 feet, and does not include the sheds attached thereto," according to a finding of the master that is final for the purposes of this appeal.

It seems clear that the terms of the lease and contract do not compel the defendant to erect a brick building which would cover the entire leased premises, with a basement under the same. Neither document contains any reference to a basement. Their only stipulation as to the size and location of the new one story brick building is that the three story wooden building, thirty by sixty feet in size, should be raised upon it, and that it should be connected with Corcoran's building. It is not reasonable to infer

that the parties contemplated placing the wooden building having an area of eighteeen hundred square feet on top of a brick building with an area of more than sixty-five hundred square feet. And the fact that the defendant was at liberty to erect a larger building if it should desire to do so, or the fact that its officers may have contemplated doing so, cannot enlarge its obligation or the plaintiff's rights beyond those fixed by the formal and final written agreements. In view of this conclusion and of what has been said heretofore as to the evidence of the Corcoran lease and of conversations between the parties, the defendant's ninth exception must be sustained.

The remaining exceptions may be disposed of briefly. So far as those numbered 5 and 5a relate to conversations before the date of the lease, they must be sustained for reasons before stated. The subsequent conversation at the board of trade rooms could not vary the terms of the written agreement, and was immaterial for any other purpose. The seventh exception was sustained by the trial judge. The eighth is now immaterial. The eleventh is covered by what has been said as to the ninth. The twelfth must be overruled, as the option was superseded by the later agreements. The tenth exception relates to the use of the premises for stable purposes after June 1, 1912, and admittedly the finding of the master was based in part upon the incompetent evidence above referred to. It seems clear that the care and housing of its horses and delivery wagons was an important part of the defendant's business and not a mere incident to it, and the continued use of the premises for stabling purposes seems contemplated from the terms of the lease, whereby the lessees were to board the lessor's horse for the first two years, and the stable building was to be placed on the new brick structure. In fact, as the master states, "shortly after the execution of the Wentworth-Corcoran leases the defendant caused alterations to be made in the stable on the premises leased from the plaintiff at an expense of $800, and [the] defendant kept some twenty odd horses and numerous teams therein." Considered on the competent evidence before us, we are of opinion that this finding was clearly wrong, and that the exception must be sustained. It is to be noted that the only special presumption that exists in favor of this finding is such as is based upon the view. This court has before it the same documentary

evidence which was before the master, and in that respect stands where he stood. *Harvey-Watts Co.* v. *Worcester Umbrella Co.* 193 Mass. 138. *Old Dominion Copper Mining & Smelting Co.* v. *Bigelow,* 203 Mass. 159, 174.

The final decree must be reversed except as to that part which deals with the right of way from the plaintiff's premises to Austin Street. The right of way in fee provided for in the lease * contemplates a title free from incumbrances and not a mere equity of redemption. See *Swan* v. *Drury,* 22 Pick. 485.

Finally we are of opinion that, in view of all the circumstances of this case and in the exercise of a sound judicial discretion, specific performance ought not to be ordered. Acting under a mistaken idea that he was entitled to a building that would cover the entire lot, the plaintiff has refused to allow the defendant to erect one such as the contract provided for. And as the defendant has not been obliged to move from its old location, it would be inequitable to compel it to erect a building for which it has no use under the changed conditions. So far as appears both parties have acted from the first in good faith, and have honestly differed as to the meaning of the agreement in one of its essential terms. It appears to us on all the facts that the proper relief to be awarded the plaintiff is that of damages, which may be assessed by the master; and, in lieu of the building as security for the rent, the plaintiff should be provided with an adequate bond. *Chute* v. *Quincy,* 156 Mass. 189. *Cawley* v. *Jean,* 189 Mass. 220. *Pray* v. *Clark,* 113 Mass. 283. *Richardson Shoe Machinery Co.* v. *Essex Machine Co.* 207 Mass. 219, 225, and cases cited.

*Decree accordingly.*

*H. T. Richardson,* for the defendants.
*E. A. Whitman,* for the plaintiff.

---

* The agreement of the Manhattan Market Company, as lessee, was as follows: "The Lessee for itself, its successors and assigns agrees to convey forthwith a right of way to said Lessor 14 feet in width from the easterly end of the Lessor's land herein leased through to Austin Street in fee."