ROBERT INDUSTRIES, INC. *vs.* WILLIAM J. SPENCE & others
(and a companion case).

Suffolk.   October 4, 1972. — January 5, 1973.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & KAPLAN, JJ.

*Landlord and Tenant*, Covenant against competition.  *Contract*, Construction.  *Evidence*, Extrinsic affecting writing.  *Law or Fact. Words.* "Lease."

Evidence of the circumstances of the making of a written contract may be admitted to discover any ambiguity in its terms and to elucidate any ambiguity, but not to contradict or vary its terms.  [753–754]

The interpretation of an unambiguous contract is a matter of law on which this court is not bound by the conclusion of the trial judge. [755]

A lease of certain land and buildings on an island for the purpose of conducting a food and beverage concession, wherein the lessor agreed not to grant a "lease" to anyone else competing with the lessee's concession but reserved the right to permit "patrons" to bring their own food and beverages for their own personal use upon the island, did not prevent one not holding a lease from the lessor or paying any fee to the lessor from conducting clambakes for compensation on areas of the island not covered by the lease. [755–756]

BILL IN EQUITY filed in the Superior Court on March 25, 1971.

The suit was heard by *Brogna*, J.

*Robert F. Sylvia* for William J. Spence & others.

*Leo Sontag* (*Raymond W. Rawlings* with him) for Robert Industries, Inc.

BRAUCHER, J.   The plaintiff filed two bills in the Superior Court.   The first sought an accounting for the interference by the defendant Spence, through the defendant corporations controlled by him, with a right granted to the plaintiff by the Metropolitan District Commission (MDC).   The second sought a declaration that a lease from the MDC to the plaintiff gave the plaintiff an exclusive right to serve food for money on George's Island in Boston Harbor and also sought an

injunction against such activity on the part of Spence and his corporations. One of the defendant corporations in the first suit, Massachusetts Bay Lines, Inc., by counterclaim sought damages for unfair competition.

The judge made findings, rulings and an order for decree in each case, ruled that the plaintiff has the exclusive right it claims, and granted the declaratory relief and injunction prayed for in the second suit. In the first suit he found that the defendants acted in the honest belief, in accordance with an opinion of MDC counsel, that the lease did not grant the exclusive right claimed, and dismissed the bill. In view of his findings in the companion case he found no damage on the counterclaim. The defendants appeal from the final decrees in both suits. The evidence is reported.

We summarize the judge's findings. Before 1967 Spence or his corporation had a lease from the MDC as a concessionaire on George's Island, and ran clambakes. During 1967 and 1968 there was no concessionaire on the island, and the facilities fell into disrepair. During this period Spence or his corporations continued to run clambakes on the island, using some of the same facilities. On May 14, 1969, the MDC leased to the·plaintiff for five years portions of three buildings and certain adjoining areas on the island for the purpose of running a food and beverage concession. The lease refers to use of one of the buildings as an "indoor picnic area," and the plaintiff serves clambakes there in inclement weather. The lease also refers to a "Regular Concession Stand," which it also calls a "Regular Snack Bar," and to the use of an adjacent area "for.lobster and fish handling." The lease requires the plaintiff to renovate and repair the leased areas, and provides that the MDC shall receive ten per cent of the plaintiff's gross receipts.

The critical provision of the lease is paragraph 8: "The Commission agrees that during the time this concession lease is in force, it shall not grant a lease to any other person or company which shall in any way

compete with the concession herein granted. The Commission, however, reserves the right to permit patrons to bring their own food and beverages for their own personal use into and upon the Island." The judge found that provision ambiguous and that the MDC and the plaintiff intended that no other food be served on the island for money except that purchased through the plaintiff. The second sentence of paragraph 8 was intended to permit individuals or small groups of individuals to bring their own picnic lunches or food to the island for preparation in outdoor grills provided by the MDC and to consume it there. It was not the intent of the MDC or the plaintiff to permit the preparation and service of food on the island for profit by any individual or company other than the plaintiff.

Spence, through a corporation whose principal business is the operation of harbor boats on scheduled runs and sightseeing trips, has been advertising and running clambakes on the island during 1969, 1970 and 1971. It solicits the business of groups of individuals and charges a price which includes transportation to and from the island and a price for the clambake. The food is in part prepared on the mainland, taken to the island on small boats, and further prepared, cooked and served on the island in areas not covered by the plaintiff's lease. There is no lease to Spence or his corporations, and they pay no fee to the MDC.

1. Contrary to the defendants' contention, there was no error in the admission of evidence of the facts and circumstances of the transaction, including the situation and relations of the parties, for the purpose of applying the terms of the written contract to the subject matter and removing and explaining any uncertainty or ambiguity which arose from such application. *Stoops* v. *Smith,* 100 Mass. 63, 66. A lease is to be read in the light of the circumstances of its execution, which may enable the court to see that its words are really ambiguous. *Sheff* v. *Candy Box Inc.* 274 Mass. 402, 406. When the written agreement, as applied to the

subject matter, is in any respect uncertain or equivocal in meaning, all the circumstances of the parties leading to its execution may be shown for the purpose of elucidating, but not of contradicting or changing its terms. *Smith* v. *Vose & Sons Piano Co.* 194 Mass. 193, 200. *Goldenberg* v. *Taglino,* 218 Mass. 357, 359. See Restatement 2d: Contracts (Tent. draft No. 5, March 31, 1970), §§ 235, 236, (Tent. draft No. 6, March 31, 1971), §§ 240, 241. Compare Uniform Commercial Code, G. L. c. 106, § 2–202, inserted by St. 1957, c. 765, § 1. Expressions in our cases to the effect that evidence of circumstances can be admitted only after an ambiguity has been found on the face of the written instrument have reference to evidence offered to contradict the written terms. See *Violette* v. *Rice,* 173 Mass. 82, 84; *Snider* v. *Deban,* 249 Mass. 59, 61.

2. In view of its completeness and specificity, the lease reasonably appears to be a complete agreement, and it is therefore taken to be a complete agreement in the absence of contrary evidence. Compare *Welch* v. *Bombardieri,* 252 Mass. 84, 87; *Caputo* v. *Continental Constr. Corp.* 340 Mass. 15, 18; *Carlo Bianchi & Co. Inc.* v. *Builders' Equip. & Supplies Co.* 347 Mass. 636, 643–644; Restatement 2d: Contracts (Tent. draft No. 5, March 31, 1970), § 235 (3). In fact, the evidence confirmed the normal inference. The treasurer of the plaintiff, who runs its business, testified that after consulting with counsel he signed the lease at the MDC office. Before signing, he read the lease and told an MDC attorney that he was concerned about a typographical error as to the size of a room. He "was told that where the Commission had signed the lease, that they'd have to redo the whole thing." He also said that he wanted to "make darn sure there's no question that I have any competition. . . . I don't want any other commercial caterer." The MDC attorney said, "That is all taken care of in the lease," and the plaintiff's treasurer then signed the lease. This testimony shows quite clearly

that the parties thought their rights and duties with respect to competing caterers were to be governed by the terms of the written lease.

The interpretation of an integrated agreement is a matter of law on which we are not bound by the trial judge's conclusions unless the problem of interpretation is affected by findings of fact. *Quintin Vespa Co. Inc.* v. *Construction Serv. Co.* 343 Mass. 547, 551. *Seward* v. *Weeks*, 360 Mass. 410, 413. See Restatement 2d: Contracts (Tent. draft No. 5, March 31, 1970), § 238. Interpretation is directed to the meaning of the terms of the writing in the light of the circumstances, not to the meaning of the conversations of the parties in the course of their negotiations. *Wentworth* v. *Manhattan Mkt. Co.* 216 Mass. 374, 376–377. The plaintiff was not "precluded from showing forth the transaction in all its length and breadth." *Saltzman* v. *Barson*, 239 N. Y. 332, 336. "After interpretation has called to its help all those facts which make up the setting in which the words are used," however, "the words themselves remain the most important evidence of intention; to put them altogether aside may at times be necessary but it always somewhat savors of usurpation . . . ." *National City Bank* v. *Goess*, 130 F. 2d 376, 380.

The critical provision of the lease here in issue forbids the MDC to grant a competing "lease"; it also reserves to the MDC "the right to permit" certain activities by "patrons" not described as lessees. If the first part of the provision is limited to leases, the plaintiff argues, the second part has no effect, except perhaps as an unnecessary partial description of what is not a lease. Reading the provision as a whole and seeking to give meaning to each part, the argument continues, we must hold that all that is not permitted is forbidden and that "lease" includes any commercial competition with the plaintiff. But the lease nowhere says that activities not expressly permitted are forbidden. It simply does not deal with competition other

than competition by lessees. The plaintiff's reading places a strain on the word "lease" greater than it can bear.

The testimony of the plaintiff's treasurer does not help the plaintiff. That testimony strongly indicates that the witness understood, at the time he signed the lease, that the MDC attorney had no authority to vary the lease terms unless the Commissioners signed the lease again. The witness had consulted with counsel and had read the lease, and there is nothing to indicate that he thought the MDC attorney was giving or was authorized to give an official interpretation of the lease. If he had been authorized to vary or interpret the lease, parol evidence that before the lease was executed the parties had agreed to forbid competition by commercial caterers other than lessees could not be permitted to control the interpretation of the lease as finally drawn up and executed. *Burns* v. *Great Atl. & Pac. Tea Co.* 312 Mass. 551, 553.

3. The counterclaim filed by one of the corporate defendants was dismissed solely on the ground that the plaintiff had an exclusive right to put on clambakes on George's Island, and that hence the defendant suffered no damage. Since the plaintiff, under a proper interpretation of the lease, had no such exclusive right, the counterclaim was improperly dismissed.

4. The final decree in each of the two cases is reserved. In the suit for declaratory relief a decree is to enter declaring that the conduct of clambakes on George's Island on premises not covered by the lease between the MDC and the plaintiff does not violate paragraph 8 of that lease. The suit for an accounting is remanded to the Superior Court for trial on the counterclaim of the defendant Massachusetts Bay Lines, Inc. The defendants are to have costs of appeal.

*So ordered.*