Welsh, P. J.
This is an action by a landlord for damages incurred by reason of alleged breach by tenant of a covenant in a lease to pay a proportional share of increased real estate taxes.
The tenant denies any obligation to pay any increase pursuant to the tax escalation clause during the period in question.
The court entered an order for summaryjudgment, interlocutory in character, determining the issue of liability favorably to the landlord. Following an assessment of damages, a final judgment was entered for the plaintiff in the sum of $8308.52.[2]
The defendant, claiming to be aggrieved by the court’s allowance of the plaintiffs motion for summary judgment on the issue of liability, duly requested a report to the Appellate Division.
The pleadings, affidavit and opposing affidavit present the following scenario:
On August 29,1972, Parkway Furniture Shops, Inc., the predecessor in title to the plaintiff, entered into a lease with the defendant. The leased premises consisted originally of two commercial buildings in West Roxbury. The lease was amended to include a third building. The term of the lease was for five years. The lessee was granted options to renew for two successive five year periods. In addition to a certain stipulated monthly sum to be paid as rent, the lease provided that the tenant pay to the landlord sixty percent of the amount of real estate taxes levied on the demised premises over the 1972 assessment.
On October 4, 1974, the tenant assigned its interest in the lease to Parker Furniture Company, Inc. This assignment was assented to by the plaintiffs, the successors in interest to Parkway Furniture Shops, Inc. However, difficulties arose and Parker Furniture Company, the assignee, vacated the premises on April 20,1982. On May 10,1982, the plaintiff and defendant entered into a *236 writing further amending the lease. The writing contained the following language:
1. Notwithstanding anything to the contrary contained in the lease. it is agreed by and between the landlord and the tenant that the rent due for the period commencing May 1,1982 and ending February 28, 1983 shall be the sum of $41,924.60, $2,392.46 of which shall be payable forthwith for the month of May, 1982 and the balance of $39,532.14 shall be payable in equal monthly installments of $4,392.46 each payable on the first day of each month in advance commencing June 1,1982. In the event that the tenant exercises its option to extend the lease as provided in paragraph 2 thereof, the rents and ami other amounts due thereunder during said extended term shall be payable in accordance with the lease unaffected by the terms of this paragraph.
The document then contained language assigning all of the tenant’s right, title and interest in any fixtures, or personal property, excluding tenant’s merchandise, sound equipment, etc., to the landlord.
The document then contained the following:
The landlord hereby releases, remises and discharges the tenant from any and all past actions, claims and liabilities of every kind and nature, including, without limitation, any claim for rent or damages to the demised premises arising out of the lease or otherwise; provided, however, that the release and discharge shall not apply to any claims that may arise hereafter.
The document concluded with a provision that except as otherwise provided herein, the lease was ratified.
An affidavit by one Sandor Steinberger was submitted by the defendant in opposition to the plaintiffs motion for summary judgment. Steinberger was the vice president and general manager, and, as such, was privy to the circumstances surrounding the case. The defendant had taken the position that it was no longer liable under the lease because its terms had been changed without the assent of the defendant. When Parker Furniture Company (the assignee) vacated the premises, the plaintiff and Steinberger on behalf of the defendant entered into negotiations with the hope of avoiding litigation. At a meeting between the plaintiff and the defendant, it was stated that the payment of a monthly sum of $4,392.46 would be in full discharge of the defendant’s financial obligations for the remainder of the term of the lease, without regard to additional assessments for taxes or cost-of-living increases. At the meeting, when the plaintiff brought up the subject of tax escalator increases, the defendant, through Mr. Steinberger, refused to go along with any tax escalator increases. It was on the basis of the understanding arrived at in this meeting that the document amending the lease and dated May 10, 1982 was drawn up by the plaintiffs then attorney and executed by the parties. No claim was made for increased taxes during the period May 1982 through May 1983 until sometime after the defendant vacated the premises in May of 1983. It is the liability of the defendant to pay 11/12 of the allotted proportionate share of increased taxes for fiscal year July 1, 1982 through June 30, 1983 that is in issue in this action.
The motion judge concluded that there was no genuine issue of material fact and that the plaintiff was entitled to judgment as a matter of law. In order to reach that conclusion, the motion judge had to determine that the pertinent parts of the lease and the documents amending it were unambig *237 uous, thus precluding the receipt of oral testimony such as that contained in the Steinberger affidavit. Upon review, we reach a different conclusion.
We determine that there is ambiguity in the written materials presented as to what the parties intended by the use of the term “rent” in the May 10,1982 amendment to the lease, permitting the reception of parol testimony as to such intention. We also conclude that the Steinberger affidavit fairly raises the question of fact as to what the parties contemplated by the use of the term “rent”.
The general principle applicable to construing alease is that when a case of competing interpretations is presented, its provisions are to be construed more strongly against the lessor. Standard San. Mfg. Co. v. Hartfield Realty Co., 284 Mass. 540, 546 (1933); Watts v. Bruce, 245 Mass. 531, 534 (1923). “ [I ] nterpretation of the terms of an unambiguous written lease is a matter of law for the court.” Great Atlantic and Pacific Tea Co., Inc. v. Yanofsky, 380 Mass. 326, 334 (1980). In order properly to execute its duty of construing a lease, or documents amending a lease, the court is required to look to the circumstances existing at the time of execution of the document to determine whether the words used are ambiguous. Robert Industries, Inc. v. Spence, 362 Mass. 751 (1973). Evidence of all the facts and circumstances attending the transaction, including the situation and relationship of the parties, may properly be received to determine whether or not an ambiguity exists. Id. at 753. The purpose of admitting such testimony is not to alter or vary the terms of the writing, but to elucidate them. Id.
It is clear that things had run amuck. The subtenant had vacated and the landlord and the tenant were having serious differences touching upon their respective rights and liabilities under the lease and as to certain fixtures and personal property. Obviously, the purpose of the negotiations attending the preparation and execution of the amendment to the lease was not merely to ratify the 1972 lease. It was to avoid a law suit. If the document is viewed in light of the circumstances attending its execution, a question of fact is presented as to whether the parties intended to eliminate the tax escalation feature by adopting a stipulated rent figure. Walker v. Rednalloh Co. 299 Mass. 591, 594 (1938): Cf. Follins v. Dill, 229 Mass. 321 (1918).
We determine that the allowance of the plaintiffs motion for summary judgment constituted error prejudicial to the defendant. The order allowing the motion for summary judgment and the judgments entered thereon are hereby vacated, and the cause is remanded for trial.

There was no claim of aggrievement in the report, as to the amount of damages awarded.