CONSTANCE L. TWEEDIE, executrix, *vs.* ROBERT W. SIBLEY.

No. 87-257.

Hampshire. December 9, 1987. — April 25, 1988.

Present: BROWN, KAPLAN, & KASS, JJ.

*Contract,* To make will, By reciprocal wills, Performance and breach. *Frauds, Statute of.*

Reciprocal wills made by a husband and wife, with provisions in each forgiving a certain debt owed to the husband by their son, executed at the same time as documents, including the note evidencing the debt, which turned over ownership of the family business to the son, did not, after the father's death and the mother's revocation of her will, constitute an agreement to make a will forgiving the note, where no explicit language expressing such a contractual obligation appeared in any of the simultaneously executed documents, nor did any of these writings express an agreement that the wills were beyond revocation or amendment. [684-686]

The principles of construing related business instruments together as an integrated contract or agreement were not applicable to an alleged contract or agreement to make a will, which, to be effective, would require explicitness of all its terms. [686-687]

Where the maker of a note defaulted on his payment obligation, the holder of the note was excused from her promise, if such were made, not to revoke a will that provided for forgiveness of the debt. [687]

CIVIL ACTION commenced in the Superior Court Department on September 13, 1983.

The case was tried before *Lawrence B. Urbano,* J.

*Philip O'Brien, Jr.,* for the defendant.

*Harry L. Miles (David Solomon* of Colorado with him) for the plaintiff.

KASS, J. In defense to an action on a note by the executrix of his mother's will, Robert W. Sibley asserts that his mother had agreed to forgive the note by will. The case was tried to a jury, upon whose verdict judgment was entered against Robert

for $63,626.14, plus interest. He has appealed from the denial of his motion for a directed verdict.

Beset by declining health and advancing age, Herbert J. Sibley determined to turn ownership and management of Sibley's Heating Service, Inc. ("Sibley's") over to his son, Robert. On June 13, 1973, at a meeting in the office of their family lawyer, Herbert, Robert, and Lucienne Sibley, who was Herbert's wife and Robert's mother, executed the following: (1) a $60,000 promissory note from Robert to his father, payable in monthly installments of $506.40; (2) cancellation by the corporation of a certificate for the father's seventy-five shares of stock in Sibley's; (3) issuance of a certificate for those seventy-five shares to Robert; (4) assignment of Robert's aggregate 100 shares to the father as security for payment on the note; (5) an agreement by Robert not to dilute the outstanding stock and to apply any extraordinary dividends to reduction of the note; and (6) wills by the father and the mother. Each will left the maker's estate to the surviving spouse and the second article of each will directed that, should the spouse predecease the maker of the will, "any debt owed me by my son, Robert W. Sibley, at the time of my death be cancelled."

During his father's lifetime, Robert was reasonably faithful about making weekly payments of $125 on the note. The father died in July, 1975, and the note passed into the hands of Robert's mother. Seven months after the father's death, Robert's payments became erratic. When Robert's mother died in April, 1983, the defendant was $35,335.40 in arrears. There was conflicting evidence about whether the mother was indulgent of her son's neglect of his obligations or angry and deprived by it. The jury were entitled, on the record, to conclude the latter. That view is consistent with the mother's revocation, on July 28, 1978, of her June 13, 1973, will. The new will omitted the note forgiveness clause and appointed the mother's daughter, Constance, as executrix. Robert had been named executor under the old will.

1. *Contract to make a will.* At the close of the plaintiff's evidence and at the close of all the evidence, the defendant moved for a directed verdict (Mass.R.Civ.P. 50[a], 365 Mass.

814 [1974]) and, after receiving the adverse jury verdict, the defendant moved for judgment notwithstanding the verdict (Mass.R.Civ.P. 50[b], 365 Mass. 814 [1974]). Those motions, which were denied, were premised on the proposition that the simultaneously executed note, wills, and other documents of 1973 should be read together and construed to constitute an agreement by the mother to make a will cancelling her son's note if her husband did not survive her. Taking the facts most favorably to the plaintiff, whether the documents and transactions could be so construed was properly a question of law for the judge. *Robert Indus., Inc.* v. *Spence*, 362 Mass. 751, 755 (1973). *Thomas* v. *Christensen*, 12 Mass. App. Ct. 169, 174-175 (1981). Restatement (Second) of Contracts § 212(2) & comment d (1981).

Oral contracts to make a will and not to revoke a will are proscribed by the Statute of Frauds. G. L. c. 259, § 5A.[1] *Green* v. *Richmond*, 369 Mass. 47, 49 (1975). *Hastoupis* v. *Gargas*, 9 Mass. App. Ct. 27, 35 (1980). *Rowell* v. *Plymouth-Home Natl. Bank*, 13 Mass. App. Ct. 1044, 1044-1045 (1982).[2]

As to written agreements to make a will, the decisions have required explicitness. The words of the statute are not satisfied by a memorandum of the contract to make a will; all the material terms of the contract itself must be made in writing. *Emery* v. *Burbank*, 163 Mass. 326, 328 (1895). *Young* v. *Young*, 251 Mass. 218, 220-221 (1925). *Read* v. *McKeague*, 252 Mass. 162, 164 (1925). *Bettencourt* v. *Bettencourt*, 362 Mass. 1, 7 (1972). *Rowell* v. *Plymouth-Home Natl. Bank*, 13

---

[1] Section 5A was inserted by St. 1965, c. 560, § 2, part of an act entitled "An Act providing that agreements to revoke or not to revoke, not to make, or to change or not to change, a will, codicil, bequest or devise shall be in writing." Section 1 of c. 560 rewrote an antecedent provision, G. L. c. 259, § 5, so that it applied only to agreements made on or before September 30, 1965. The 1965 legislation appears to have been adopted in reaction to *Foman* v. *Davis,* 316 F.2d 254, 256 (1st Cir. 1963), in which the court construed the earlier provision, i.e., § 5, as not applicable to an agreement *not* to make a will.

[2] As the *Green* v. *Richmond* and *Hastoupis* v. *Gargas* cases amply illustrate, a plaintiff may recover the fair value of services furnished on the basis of an oral promise to make a will.

Mass. App. Ct. at 1045. *Mateza* v. *Walker*, 469 F. Supp. 1276, 1278 (D. Mass. 1979). Newhall, Settlement of Estates § 334 (4th ed. 1958). This follows from a juxtaposition of the more familiar § 1 of the Statute of Frauds (G. L. c. 259), which is content to permit an action to be brought on the basis of "some memorandum or note" of the agreement asserted, with § 5A, inserted by St. 1965, c. 560, § 2, which provides (so far as pertinent) that, "No agreement to make a will . . . or to revoke or not to revoke a will . . . shall be binding unless *such agreement* is in writing and signed by the person whose executor or administrator is sought to be charged . . ." (emphasis added).

Although the simultaneous execution of wills and making of business arrangements by the Sibleys is suggestive of some common purpose, more than suggestion is required. Execution of simultaneous wills does not, of itself, show that the parties entered into a contract to make those wills or are bound never to revoke them. See *Bettencourt* v. *Bettencourt*, 362 Mass. at 6, and cases cited; Annot., 169 A.L.R. 9, 22 et seq. (1947). The *Bettencourt* opinion, at 7, went on to say, "The uncertainties concerning the effect, interpretation, and consequences of joint, mutual, or reciprocal wills are strong reason for strictly construing such instruments, in effect, as presumptively not intended to make or reflect a contract for a particular disposition of property. In the absence of explicit language compelling such a construction, simultaneously made wills with reciprocal provisions . . . should not be interpreted as expressing a contractual obligation." No language appears in the Sibleys' June 13, 1973, papers which expressly ties the wills of the elder Sibleys to the sale of Herbert Sibley's stock to his son and nothing expresses an agreement that the wills were beyond revocation or amendment.

By reason of the special requirements imposed on agreements concerning wills we do not apply to the facts here those cases which construe related business instruments together as an integrated agreement. See e.g., *Skilton* v. *R.H. Long Cadillac LaSalle Co.*, 265 Mass. 595, 597 (1929); *Harding* v. *Broadway Natl. Bank*, 294 Mass. 13, 19-20 (1936); *Phoenix Spring Bev-*

*erage Co.* v. *Harvard Brewing Co.,* 312 Mass. 501, 505 (1942); *Chelsea Indus., Inc.* v. *Florence,* 358 Mass. 50, 55 (1970); *Holmes Realty Trust* v. *Granite City Storage Co., ante* 272, 276-277 (1988).

2. *Consequence of Robert's failure to perform.* An independent ground for the jury's verdict and the resultant judgment is that, even had Lucienne Sibley made an agreement not to revoke her 1973 will in consideration of Robert's note, she would have been excused from her promise by reason of Robert's material default on the note. "[I]t is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time." Restatement (Second) of Contracts § 237 (1981). See the discussion in Farnsworth, Contracts § 8.9 (1982).

*Judgment affirmed.*