CAROL HOOK & another[1] *vs.* MARTHA HOOK, individually and
as executrix,[2] & others.[3]

No. 00-P-1879.

Suffolk. October 18, 2002. - February 7, 2003.

Present: KANTROWITZ, KASS, & MILLS, JJ.

*Trust,* Real estate trust, Assets of trust.

In a civil action seeking specific performance of an order conveying particular
buildings to a realty trust, the judge erred in granting the defendants' mo-
tion for summary judgment, where, although it was not without some
ambiguity, the complaint upon which the earlier order was based may be
read to have sought relief with respect to the buildings as well as the land
on which they were situated, and where the earlier order to "convey the
property" should not have been read to exclude the buildings. [346-348]

In a civil action brought by some of the owners of beneficial interests of a
family realty trust seeking an order requiring the trustees to collect market
rent from a family business, the judge properly granted the defendants' mo-
tion for summary judgment, where an earlier agreement provided for
nominal rent until the family business terminated, and where changes in
the membership of the partnership running the business did not constitute a
termination of it so as to trigger the market rent condition, because there
was no requirement in that earlier agreement of an exact identity of
interests between the members of the partnership and the owners of
beneficial interests in the trust. [348-349]

CIVIL ACTION commenced in the Superior Court Department on
August 27, 1998.

The case was heard by *Linda E. Giles,* J., on a motion for
summary judgment.

*Christopher J. Kiely (Matthew J. Conroy* with him) for the
plaintiffs.

[1]Frederick J. Conroy, as trustee of the A. J. Hook Family Trust.

[2]Of the estate of Alfred Hook.

[3]James J. Hook, individually and as trustee of the Hook Family Realty
Trust; Priscilla Hook, individually and as trustee of the Hook Family Realty
Trust; and Carolyn Hook.

*Richard A. Savrann* for Martha Hook & others.

*Howard P. Blatchford, Jr.*, for James J. Hook, was present but did not argue.

MILLS, J. The plaintiffs,[4] owners of a twenty percent interest in a realty trust,[5] sought several forms of relief, including an order requiring the trustees to collect market, rather than nominal, rent from a family business. After a hearing, a Superior Court judge (the 2000 motion judge) allowed the defendants' motion for summary judgment, ruling, inter alia, that (1) certain structures had properly been excluded from a conveyance of property to the trust; and (2) the trust was not currently required to collect market rent from the family business.[6] We affirm in part and reverse in part.

1. *Ownership of the operating business.* We recite the undisputed facts from the summary judgment record. Prior to 1952, James Hook (James I)[7] established a wholesale and retail lobster business called James Hook & Company (company) at 15-17 Northern Avenue in Boston (premises). The business was later conducted as a partnership and, by the time of the 2000 hearing, was known as James Hook & Company, LLC (LLC). By reason of gift, inheritance, or purchase, the interests in the LLC were owned in 2000 by four sibling grandchildren of James I, as follows: James J. Hook (James III), 62.5 percent; Edward A. Hook, Jr., Alfred A. Hook, and Nancy Lee Hook, 12.5 percent each.

At times relevant to this case (1) LLC operated a wholesale and retail lobster business at the premises and was the sole occupant of those premises; (2) James III and each of his three siblings worked at the business of LLC on the premises; and (3) James III had succeeded, by purchase, gift, or inheritance, to

---

[4]Carol Hook is the former wife of Anthony J. Hook (Anthony) and a beneficiary of Anthony's trust.

[5]The Hook Family Realty Trust.

[6]The judge's ruling also addressed two other claims that were unopposed by the plaintiffs and were not pursued in this appeal.

[7]Although none of the persons named James Hook added suffixes to their names, references to those persons in this decision are distinguished by the Roman numerals I, II and III to identify the person named James Hook in each of three generations of the Hook family.

forty percent of the beneficial ownership of the Hook Family Realty Trust (family trust).[8]

2. *Prior litigation.* a. *The 1977 action.* In 1977, Anthony J. Hook (Anthony), a son of James I, commenced a Superior Court action against his siblings, Alfred, James (James II), and Helena, alleging multiple breaches of their partnership agreement and requesting an accounting and a declaratory judgment with respect to the ownership of the real estate at 15-17 Northern Avenue.[9]

The parties settled the 1977 action under a written agreement (the 1984 agreement) which provided, in relevant part, that Anthony (1) be paid $100,000 and be relieved of certain liabilities, and (2) release his claims against his brothers[10] and any claim to "land at 15-17 Northern Avenue." In turn, Anthony's brothers agreed to convey their interest in "land" to a nominee trust in which twenty percent of the beneficial interest would be held in trust for Anthony and his nominees. The 1984 agreement further provided that the nominee trust would lease "said land" to James Hook & Co. (the partnership) "on a long-term basis" and "on a net net basis with a nominal rent." Finally, the agreement recited that "[a]t such time as the business terminates, the lease will terminate." The agreement contained no explicit definition of "the business," but does refer to "the management, finances and *property of the partnership*" (emphasis supplied).

b. *The 1991 action.* In 1991, Anthony commenced a Superior Court action against James II and Martha Hook (individually and as executrix of the estate of Alfred). In that action, Anthony, noting the 1989 death of Alfred, alleged a termination of the business and requested, among other things, specific performance of the 1984 agreement and a judgment directing that market rent be paid for use of the property, as triggered by the business termination.

---

[8]None of the four siblings was a party to the 1977 litigation, the 1984 agreement, or the 1991 litigation discussed *infra.*

[9]Anthony, in his complaint, refers to "15 and 17 Northern Avenue, Boston" as "the real estate and buildings thereon," the "real estate," "place of business of the partnership," and "real estate, and buildings thereon."

[10]In 1984, one of their siblings (Helena) conveyed her interest in the partnership to her brothers Alfred and James II.

After a Superior Court judge (1991 motion judge) partially allowed the defendants' motion to dismiss, the defendants made an offer of judgment as to the remaining counts, proposing to establish the family trust, in which James II and Martha Hook would each own a forty percent beneficial interest and Anthony's nominee would own a twenty percent beneficial interest. The defendants further offered that they be ordered "to convey the property located at 15-17 Northern Avenue" to the family trust. The defendants' motion for summary judgment on that offer was allowed by a Superior Court judge (the 1993 motion judge).

In his memorandum and order, the 1993 motion judge adopted the defendants' proposed judgment, approved a proposed form of the family trust, and ordered a conveyance of "property located at 15-17 Northern Avenue" to the trust.[11] The 1993 motion judge also considered, and rejected, the plaintiffs' argument that the business had terminated by virtue of changes in the identities of Hook family members who then constituted the members of the partnership operating the business, noting that a business is "an enterprise separate and apart from the legal relations among its owners." The judge also commented as follows:

> "There is no evidence before the court by way of affidavit to show that the business known or formerly known as James Hook & Company has terminated. This conclusion is totally consistent with the evident purposes of the [1984] settlement agreement as disclosed by its terms: so long as 'the business' is operating at this address, the rent will be nominal if the owners of it are beneficiaries of the nominee trust. If a different business, not owned by a beneficiary, starts to operate at the address the rent should not be nominal nor should the term of the lease be net net or for a long period of time. At that point the plaintiff's beneficial interest must bear fruit."

The judge determined that the defendants had no duty, "on the

---

[11]The judge also referred to "interest in land" when identifying 15-17 Northern Avenue.

facts before the court, to pay fair rental value to the plaintiff at this time."[12]

3. *Ownership of the premises.* In 1952, the United States government conveyed title to the land at 15-17 Northern Avenue, Boston, Massachusetts, to James II and his siblings, Alfred, Edward, and Helena. Specifically excluded from that conveyance was the "two-story building occupied by James Hook & Co." In 1996, following the 1993 judgment, the real estate, specifically excluding the building, was conveyed to the family trust and is still held by the trust.[13]

The building occupied by the lobster business rests on a pier; is the same building that existed in 1952; was always, according to James III in his May 8, 2000, affidavit, considered as personal property of the partnership; and is presently treated as personal property of the LLC.[14] Except for minor repairs and maintenance, the building has not changed from at least 1975 to the present.

LLC continues to pay all taxes, insurance, and upkeep for the property. The only income of the family trust has been from two eminent domain takings, and twenty percent of the net proceeds of those takings has been paid to Conroy as trustee of Anthony's trust.

4. *Discussion.* a. *Specific performance.* It will be recalled that the 1993 judgment ordered defendants James II and Martha Hook, both individually and as executrix of the estate of Alfred, to "convey the property located at 15-17 Northern Avenue . . . to the Hook Family Realty Trust," and that a deed of the land was thereafter executed, excluding the building. In the present action, the plaintiffs contend that the conveyance of the land

[12]The 1993 judgment was affirmed by this court in 1994. See *Hook* v. *Hook*, 37 Mass. App. Ct. 1124 (1994).

[13]The current beneficiaries of the trust are James III, forty percent; Priscilla Hook, twenty percent; Carolyn Hook, twenty percent; and Frederick Conroy, as trustee of Anthony's trust, twenty percent. Conroy, as trustee of Anthony's trust, holds the twenty percent interest Anthony received pursuant to the 1984 agreement. Priscilla and Carolyn Hook are the daughters of Martha and Alfred Hook.

[14]The May 8, 2000, affidavit of James III recites the following: "To the best of my knowledge and belief, the structure . . . was always considered and treated as personal property of James Hook & Company." This affidavit was not contradicted by the plaintiffs.

alone did not satisfy the 1993 judgment, and sought an order for specific performance. In considering that request, the 2000 motion judge commented that "[s]ince 1951, the language in the deeds conveying the land in question has specifically excluded 'structures or all buildings' " and that the structures have always been treated as part of the personalty, not the realty, of the partnership (and its successor, the LLC). She was incorrect in one respect.

Not all deeds excluded the buildings, and at least one deed from James II to James III in 1995 references an interest in real estate and buildings. Additionally, it is apparent from our review of the record that not all historic deeds are included in the record. And while there is some significance to the uncontested factual assertion that the partnership (and its LLC successor) always considered the buildings to be separate personalty, see note 14, *supra*, that assertion does not seem fairly binding upon Anthony or his successor in interest. We cannot assume the 1993 motion judge knew of partnership "understandings" that were contained in an affidavit filed in a subsequent action. We consider the 1993 motion judge's meaning based upon his memorandum of decision, the language of his order, and the record before him (as it is available to us from the record of this case).

We note that Anthony, as plaintiff in the 1977 action, asserted:

> "An actual controversy has arisen between [Anthony] and the individual defendants as to whether the real estate, and buildings thereon . . . is an asset of the partnership . . . and as such, whether legal title to said real estate should be changed to reflect plaintiff's one-fourth (¼) undivided interest."

While it is not without some ambiguity, Anthony's 1977 complaint may be read to have sought relief with respect to the buildings, as well as the land.

Additionally, we look to the very simple language suggested by the defendants, and ordered by the 1993 motion judge — "convey the property." We conclude that the 2000 motion judge was incorrect in determining that the 1993 order to convey the property should be read to exclude the buildings.

With regard to the use of the words "with the buildings thereon" in a Massachusetts deed, it has been commented that they have, in fact, no legal operation, though they are often included. See Crocker's Notes on Common Forms § 170 (8th ed. 1995 & Supp. 2000). The general rule is that the erection of a building on land of another makes it a part of the realty in the absence of an agreement that it should remain personal property. See *Meeker* v. *Oszust*, 307 Mass. 366, 369 (1940). And, while we can find no Massachusetts case that explicitly defines "the property" (when used in an order of conveyance) as meaning land and buildings, the word "property" is a word of comprehensive meaning, see *Holbrook* v. *Brown*, 2 Mass. 279, 281 (1807); *Titus* v. *Turkelsen*, 302 Mass. 84, 86 (1938), and in its ordinary legal signification, it "extends to every species of valuable right and interest, and includes real and personal property" (citations omitted). *Ibid.* We are confident that the 1993 motion judge's order instructed conveyance of the buildings as well as the land. See *Labelle* v. *Lafleche*, 289 Mass. 140, 144-145 (1935).

b. *Market rent.* The 2000 motion judge correctly determined that no market rent is currently required by the 1984 agreement or the 1993 order. The plaintiffs argue that the 1984 agreement, read in conjunction with (or notwithstanding) the 1993 motion judge's order, now requires that market rent be paid by the existing business to the family trust. The 1984 agreement provided for nominal rent until "the business terminated." The 1993 motion judge, upon a record showing that the members of the partnership and beneficial interests in the land had changed since 1984, determined that the changes did not constitute a termination of the business so as to trigger the market rent condition.

In the present case, four siblings, grandchildren of James I, operate substantially the same business as the family was conducting at the time of the 1984 agreement. The only changes in the circumstances are in the identities of the members of the Hook family who now constitute the owners of the entity operating the business.

The 2000 motion judge, noting the decision of the 1993 motion judge, read that decision as not requiring an exact identity

of interests between the operating company and the beneficial interests in the family trust. She correctly noted that the business operation has remained constant for the entire history of the case and the disputes.

We agree that neither the 1993 order nor the 1984 agreement requires an exact identity of interests between the partnership (or the LLC) and the beneficial interest of the family trust. Among other things, it is quite apparent that Anthony, an owner of the real estate through the family trust, was to be separated from any business interest in the operation of the lobster company. Thus, within the 1984 agreement, it was implicit that there was not an identity of interests. The question is whether "the business" has terminated as provided in the 1984 agreement. The construction of that contract is a matter properly before the court, see *Robert Indus., Inc.* v. *Spence*, 362 Mass. 751, 755 (1973); *Hastings Assocs., Inc.* v. *Local 369 Bldg. Fund, Inc.*, 42 Mass. App. Ct. 162, 172 (1997), and the judge's decision was correct. As the 1993 motion judge commented, "a 'business' is an enterprise separate and apart from the legal relations among its owners." See *Brown, Rudnick, Freed & Gesmer* v. *Assessors of Boston*, 389 Mass. 298, 301 (1983); *Community Feed Stores* v. *Director of the Div. of Employment Security*, 391 Mass. 488, 491 (1984). See also G. L. c. 108A, § 6(1) (definition of partnership). We also agree with the implied determination of the 2000 motion judge that the Hook family's operation of the business was contemplated by the parties to the 1984 agreement. The 2000 motion judge's ruling was correct, and no market rent is payable at this time.

The judgment is reversed in part and affirmed in part. The case is remanded for entry of a new judgment in accordance with this opinion.

*So ordered.*