BLAKE BROTHERS CORPORATION *vs.* DANIEL F. ROCHE
& another, trustees.

Suffolk.   October 7,  1981. — November 4, 1981.

Present: BROWN, CUTTER, & DREBEN, JJ.

*Practice, Civil,* Summary judgment, Discovery.  *Landlord and Tenant,*
Termination of tenancy.

Whether a sublease of certain premises, providing that it would terminate
    if the sublessor's lease of the premises terminated "for any cause," was
    terminated by the sublessor's voluntary purchase of the premises was a
    matter of law, and, in the absence of support for the sublessee's claims
    either that extrinsic evidence would raise questions of interpretation of
    the sublease or that information sought through discovery would raise
    a material factual question, a motion for summary judgment to the ef-
    fect that the sublease had terminated was properly allowed. [558-561]

CIVIL ACTION commenced in the Superior Court Depart-
ment on October 30, 1980.

The case was heard by *Ronan,* J., on a motion for sum-
mary judgment.

*John Silas Hopkins, III (Eleanor D. Acheson & Paul P.
Nicolai* with him) for the plaintiff.

*James C. Gahan, Jr. (John T. Underhill* with him) for the
defendants.

DREBEN, J.   This is an appeal from a partial summary
judgment entered under Mass.R.Civ.P. 54(b), 365 Mass.
821 (1974), which held that the plaintiff's sublease had ter-
minated and ordered the plaintiff to vacate the leased prem-
ises.  The sublease was subject to another lease known as the
Westby lease and was to terminate in the event of the termi-
nation of the Westby lease.  The judge ruled as matter of
law that the Westby lease having been terminated by a pur-
chase of Westby's interest by First National Stores, Inc.

(Finast),[1] the plaintiff's sublease with Finast, in turn, terminated. The plaintiff in its appeal argues that termination of the Westby lease by voluntary purchase was not the kind of termination which invoked the termination clause of the sublease. Moreover, it claims that the trial judge should not have granted summary judgment without allowing the plaintiff further discovery in order to obtain facts needed to oppose the defendant's motion in view of an affidavit filed in accordance with Mass.R.Civ.P. 56(f), 365 Mass. 825 (1974). We reject the plaintiff's claims and affirm the partial summary judgment.

Finast, the lessee of a shopping center in Wellesley under the Westby lease, by sublease, leased a portion of the premises to the plaintiff. Section 16 of the Westby lease gave Finast the right to purchase the leased premises if in its judgment further leasing "shall be uneconomic or undesirable." Section 17 provided that the completion of such a purchase by Finast would result in a termination of the Westby lease.

The plaintiff does not challenge this conclusion or that there was, in fact, a purchase of the Westby interest by Finast or the defendants.[2] What it does contest is that a termination of the Westby lease through a voluntary purchase by Finast is a termination "for any cause" within the meaning of section 1B of the plaintiff's sublease.

The relevant portions of section 1A,[3] which requires termination of the sublease in the event of a termination of

---

[1] In this opinion both First National Stores, Inc. , and its successor, First National Supermarkets, Inc., are referred to as Finast.

[2] The documents by which the defendants became owners of the Finast and Westby interests were obtained by the plaintiff through discovery. The plaintiff's brief states that "the undisputed facts indicate that the defendants purchased the interests of both Finast and Westby."

[3] Section 1A provides in part:

"Anything herein contained to the contrary notwithstanding, upon a termination of said Diehl lease, prior to the expiration or termination of this lease, for any cause whatsoever, including default or breach by the Lessor, this lease shall forthwith and *ipso facto* terminate at the same time as said Diehl lease."

another lease known as the Diehl lease, and of section 1B[4] are set forth in the margin. Both clauses explicitly provide for termination of the sublease in the event of termination of the Westby or Diehl leases "for any cause" including termination occasioned by reason of a default by Finast. Although section 1A contains the word "whatsoever" and 1B does not, we do not consider there to be a material difference between the two clauses. In the absence of any showing that "the problem of interpretation [would be] affected by findings of fact," the construction of section 1B is a matter of law. *Robert Indus., Inc.* v. *Spence*, 362 Mass. 751, 755 (1973). In such event the trial judge was correct in ruling that the sublease is to terminate on termination of the Westby lease whatever be the cause of such termination, including termination by purchase.

The plaintiff argues, however, that the construction is here affected by extrinsic evidence. It would have us construe "for any cause" to mean only an involuntary cause and urges that additional discovery is needed in order to allow it to obtain the facts needed to establish that construction. More particularly, the plaintiff argues that it is entitled to ascertain whether Finast has taken the position with other sublessees that a purchase by Finast under arrangements similar to those of the Westby lease does not terminate their subleases.

We recognize that the meaning given by the parties to a term in an integrated agreement may be affected by the factual setting in which the agreement is negotiated. *Antonellis*

---

[4] Section 1B provides:

"Notice is also hereby given by the Lessor, and the Lessee recognizes, that this lease is also subject to a lease . . ., hereinafter referred to as Westby lease. A copy of said lease is kept in the records of First National Stores Inc., at [address in Somerville] where the same may be inspected by the Lessee . . . . In the event of a termination or cancellation of said Westby lease for any cause, including default or breach by First National Stores, Inc., prior to the expiration or termination of this sub-lease, then this sub-lease shall forthwith and *ipso facto* terminate at the same time as said lease shall terminate."

v. *Northgate Constr. Corp.*, 362 Mass. 847, 851 (1973). *Thomas* v. *Christensen, ante* 169, 175 (1981). Restatement (Second) of Contracts § 212 (1981). However, the plaintiff here has not presented "a good reason, in accordance with rule 56(f), why [it] is unable to present facts justifying [its] opposition to the motion." *Framingham Clinic, Inc.* v. *Zoning Bd. of Appeals of Framingham*, 382 Mass. 283, 298-299 (1981), quoting from 10 Wright & Miller, Federal Practice and Procedure § 2727 at 534 (1973 & Supp. 1980).

The plaintiff was a party (or successor party) to the lease and must be assumed to have knowledge of the transaction or access to information concerning it. The judge would have been justified "in expecting to find [in an affidavit] some reference to the circumstances" of the negotiations which would support its claim that extrinsic evidence would raise a problem of interpretation. *Community Natl. Bank* v. *Dawes*, 369 Mass. 550, 558 (1976). See *First Natl. Bank* v. *Slade*, 379 Mass. 243, 244-246 (1979). See also *United States Trust Co.* v. *Herriott*, 10 Mass. App. Ct. 313, 317-319 (1980). No facts are alleged by the plaintiff which suggest the construction urged by it or which show that when the lease was negotiated the plaintiff had reason to believe that the meaning now claimed was adopted by the parties. Even if it could be ascertained through discovery that Finast in similar circumstances had asserted that a voluntary purchase did not terminate a sublease, such an assertion by Finast, unless communicated to the plaintiff, would have little significance. The plaintiff, in order to rely on such evidence, would have had to have been aware of such usage by Finast. Restatement (Second) of Contracts § 212, Comment a (1981). It makes no such claim. The most the plaintiff has shown is that an additional fishing expedition might produce signs that Finast had on occasions, perhaps similar, taken a position consistent with the plaintiff's present construction.

The plaintiff also urges that it is entitled to depose Finast in order to establish that Westby was under the same man-

agement as Finast, that the involuntary termination provisions were inserted to protect outsiders, and that the purchase provisions were to protect Finast. It argues that while it may be acceptable for a sublessee to risk an involuntary arms-length termination, the risk of a voluntary repurchase is not acceptable. However, this claim is also beside the point. The fact that the plaintiff may have entered into an unfortunate bargain by agreeing to section 1B of the sublease is not of itself evidence that a different bargain was contemplated. The information sought would not have created an issue of construction for purposes of the motion for summary judgment.[5] See *P.A.M. News Corp.* v. *Butz*, 514 F.2d 272, 278 (D.C. Cir. 1975).

Thus, nothing was presented to the judge which suggested that the interpretation of the words "for any cause" would be affected by extrinsic evidence, or that the information sought would have raised a material factual question. In the absence of such a showing by the plaintiff, who of necessity had first hand information of the circumstances in which the lease was negotiated, no good reason under Mass.R.Civ.P. 56(f) was presented. The judge properly concluded that the interpretation of the contract was a matter of law and that additional discovery was not needed. *P.A.M. News Corp.* v. *Butz*, 514 F.2d at 278; cf. *Community Natl. Bank* v. *Dawes*, 369 Mass. at 558.

Moreover, the trial judge has discretion in determining whether any relief is to be granted under Mass.R.Civ. P. 56(f). See 6 Moore's Federal Practice par. 56.24 (2d ed. 1980). In view of the discovery already permitted, the extensive discovery sought by the plaintiff earlier in the pro-

---

[5] Other than our discussion in connection with the plaintiff's alleged inability to "present by affidavit facts essential to justify [its] opposition" to the motion for summary judgment," Mass.R.Civ.P. 56(f), 365 Mass. 825 (1974), we do not consider, on this appeal from the partial summary judgment entered under Mass.R.Civ.P. 54(b), the plaintiff's appeal from discovery orders. It is not apparent from the record that these orders do not relate, as well, to the defendants' counterclaim.

ceedings,[6] and the marginal significance of the material requested, the judge did not abuse his discretion in not permitting additional discovery prior to granting the motion for summary judgment. See 6 Moore's Federal Practice, par. 56.24 (2d ed. 1980); 10 Wright & Miller, Federal Practice and Procedure § 2741 (1973 and Supp. 1980); *Daily Press, Inc.* v. *United Press Intl.*, 412 F.2d 126, 135 (6th Cir.), cert. denied 396 U.S. 990 (1969). Cf. *First Natl. Bank* v. *Slade*, 379 Mass. at 245-246; *United States Trust Co.* v. *Herriott*, 10 Mass. App. Ct. at 317-319.

*Judgment affirmed.*

---

[6] The plaintiff's requests included: "All documents that refer or relate to the transaction in which the defendants acquired the interests of First National Supermarkets, Inc., and Westby Realty, Inc., in the parcel of land on Linden Street in Wellesley, Massachusetts, *including, without limitation, drafts of documents effecting the transaction, documents discussing the efficacy of the "Termination of Sub-Lease" dated September 30, 1980, to terminate the lease from First National Stores, Inc., to Curtis L. Blake and S. Prestley Blake as Trustees of Friendly Retail Routes dated December 2, 1963, documents considering other ways to effect the transaction, documents discussing termination of the lease of the plaintiff or any other tenant, documents discussing the purpose of the transaction,* plans, specifications or contracts for remodeling the shopping center on the parcel, *and documents giving legal opinions or legal advice with respect to the transaction"* (emphasis supplied).

The italicized portions of the request were, after hearing, not required to be produced.