**WILMOT H. SIMONSON CO., INC.,**
**Plaintiff, Appellant,**

v.

**GREEN TEXTILES ASSOCIATES,**
**INC., et al., Defendants,**
**Appellees.**

**No. 84–1665.**

United States Court of Appeals,
First Circuit.

Heard Dec. 4, 1984.
Decided Feb. 27, 1985.

Margaret H. Marshall, Boston, Mass., with whom Jessica Block and Csaplar & Bok, Boston, Mass., were on brief, for plaintiff, appellant.

David J. Brody, Boston, Mass., with whom Christine M. Roach and Widett, Slater & Goldman, P.C., Boston, Mass., were on brief, for defendants, appellees.

Before BREYER and TORRUELLA, Circuit Judges, and MALETZ,* Senior Judge.

MALETZ, Senior Judge.

Plaintiff-appellant Wilmot H. Simonson Co. sought declaratory relief and liquidated damages for an alleged breach of a covenant not to compete. It now appeals from the district court's entry of summary judgment in favor of defendants-appellees

* Of the United States Court of International Trade, sitting by designation.

Green Textile Associates, Inc. (GTA) and Maurice J. Simon (Simon). We affirm.

## I

On September 13, 1979, the Nedlog Company, an Illinois corporation, agreed to purchase a beverage company from GTA, GTA's president Simon, and Wilmot H. Simonson Co. (WHS-Mass.), a Massachusetts corporation. At the time, the beverage company, WHS-Mass., was a wholly owned subsidiary of GTA. The Simonson name was among the assets to be transferred to Nedlog. Prior to the sale, Simon's brother-in-law, Richard Green (Green), was the vice president, assistant treasurer, clerk, and a director of WHS-Mass.

Shortly before closing of the sale on October 3, 1979, Nedlog organized an Illinois corporation by the name of Wilmot H. Simonson Co. (Simonson) and assigned its rights under the September 13 agreement of sale to this new corporation. Thus, Simonson acquired the assets of WHS-Mass. and later became the plaintiff in this action.

The dispute concerns the liability of GTA and Simon for Green's competition with Simonson. At the heart of the dispute is paragraph 8.0 of the agreement of sale, entitled "Covenants Not to Compete," which provides:

[WHS-Mass.], [GTA] and Simon, jointly and severally, hereby agree that, from the date of execution of this Agreement, *and for a period of ten (10) years thereafter,* and in any area in which [WHS-Mass.] or [Nedlog] (or any of their respective parent, subsidiary or affiliated entities) currently conduct their business they (*or any of their respective subsidiary, parent or affiliated entities or persons*) shall not directly or indirectly become a shareholder, member, partner, employee, investor, counsel, associate, agent, advisor, or participate in any manner with any corporation, partnership, sole proprietorship or any other business, entity or person (i) which directly or indirectly engages in the same or similar business as [Nedlog] or [WHS-Mass.] as they currently conduct their business or (ii) which directly or indirectly solicits the principals, customers or clients of [Nedlog] shall make payment to [WHS-Mass.] (or any assignee approved by [Nedlog] in writing in the exercise of its reasonable discretion) of ONE HUNDRED THOUSAND DOLLARS ($100,000.00) payable in eight (8) annual installments of TWELVE THOUSAND FIVE HUNDRED DOLLARS ($12,500.00) each, the first payment to be due a year from the Closing Date. [Emphasis added.]

A crucial issue is whether or not Green was an "affiliated person" within the meaning of paragraph 8.0 and, thus, whether his competition with Simonson constituted a breach by GTA and Simon of the covenant not to compete. In this connection, another provision of the agreement of sale required Nedlog to hire Green as an employee of its subsidiary, Simonson. That obligation was set forth in paragraph 7.1 of the sale agreement:

[Nedlog] agrees that on Closing Date, it will enter into an Employment Agreement in the form of Exhibit "D" attached hereto with Richard Green for a period of three (3) years from the Closing Date at an annual salary of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00). Pursuant to that agreement, Richard Green will perform for [Nedlog] substantially the same duties as he now performs for [WHS-Mass.].

Simonson and Green executed the employment agreement on October 3, 1979, the date on which the sale was closed. The employment agreement contained a covenant barring Green from competing with Simonson for a period of three years following the termination of his employment, as opposed to the ten-year period covered by paragraph 8.0 of the sale agreement.

On November 24, 1980, Simonson fired Green. After he was discharged, Green obtained employment with one of Simonson's competitors, only to be fired after three months. Green then found employment with a second competitor of Simonson, but was again fired after ten months.

Alleging that Green's employment with these competitors constituted a breach by GTA and Simon of paragraph 8.0's ten-year covenant not to compete, Simonson brought this action for a declaratory judgment—to determine the rights and duties of the parties—and for liquidated damages. Green was not a party to the sale agreement and is not a party to this action.

Both sides moved for summary judgment. The district court, in an unpublished memorandum and order, concluded that Green was, at the time the parties agreed to the sale, an "affiliated person" within the meaning of paragraph 8.0. The court added, however, that "Green was not an affiliated person at the time of his disputed activities," since he had by then severed his ties with GTA. The issue, then, for the district court was GTA's liability for competitive activities by a person who was "affiliated" at the time of sale but not at the time of the competitive activities.

Finding no guidance in the language of the sale agreement or the prior negotiations, the court applied Massachusetts law—as required by the agreement of sale and by Green's employment agreement with Simonson—and construed the perceived ambiguity of paragraph 8.0 against Simonson, the putative drafter of the contract. *See Chelsea Indus., Inc. v. Accu-Ray Leasing Corp.,* 699 F.2d 58, 61 (1st Cir.1983). Since that paragraph, if construed against Simonson, would not bar competitive activities by a person no longer "affiliated" with GTA, the court allowed GTA's and Simon's motion for summary judgment. This appeal by Simonson followed.

## II

We disagree with the district court's conclusion that Green was an "affiliated person" at the time of the agreement of sale. The short of the matter is that the agreement of sale not only required Simonson to hire Green; it specifically incorporated his employment agreement. Whereas the sale agreement barred competition by WHS-Mass., GTA, Simon, and "affiliated entities

or persons" for a period of ten years, the employment agreement barred competition by Green for a period of only three years.

In interpreting the scope of paragraph 8.0, we are assisted by several principles. "Contract interpretation is largely an individualized process, with the conclusion in a particular case turning on the particular language used against the background of other indicia of the parties' intention." *United States v. Seckinger,* 397 U.S. 203, 212 n. 17 at 213, 90 S.Ct. 880, 885 n. 17 at 886, 25 L.Ed.2d 224 (1970). *Accord Shea v. Bay State Gas Co.,* 383 Mass. 218, 222–23, 418 N.E.2d 597, 600 (1981). *Cf. Chelsea Indus., Inc. v. AccuRay Leasing Corp.,* 699 F.2d 58, 60 (1st Cir.1983) (contract is what parties reasonably understand). "[T]he meaning given by the parties to a term in an integrated agreement may be affected by the factual setting in which the agreement is negotiated." *Blake Bros. Corp. v. Roche,* 12 Mass.App. 556, 558, 427 N.E.2d 501, 503 (1981). The Appeals Court of Massachusetts also observed:

> "The interpretation of an integrated agreement is directed to the meaning of the terms of the writing or writings in the light of the circumstances" of the transaction. [Citations omitted.] No form of words is self-interpreting; meaning can only be understood in context. [Citation omitted.] However, "after the transaction has been shown in all its length and breadth, the words of an integrated agreement remain the most important evidence of intention." [Citations omitted.]

*Thomas v. Christensen,* 12 Mass.App. 169, 175, 422 N.E.2d 472, 476–77 (1981).

In *Chelsea Indus., Inc. v. Florence,* 358 Mass. 50, 260 N.E.2d 732 (1970), the Supreme Judicial Court, confronting a purchase contract that was coupled with an employment contract—both of which contained covenants not to compete—stated: "The two contracts were part of a single transaction. In construing them, weight must be given to that circumstance." *Id.* at 55, 260 N.E.2d at 735. Here, too, the agreement of sale and the employment

agreement "were part of a single transaction." Where "the two contracts together seem reasonably complete," Massachusetts law provides that they "are to be treated as an integrated agreement setting forth the entire understanding reached by the parties." *Thomas*, 12 Mass.App. at 174, 422 N.E.2d at 476 (citing *Robert Indus., Inc. v. Spence*, 362 Mass. 751, 754, 291 N.E.2d 407, 409 (1973)).

Reading the documents as a unit, we conclude that Green could not have been an "affiliated person" within the meaning of paragraph 8.0, because the parties included in his employment agreement a separate covenant not to compete. As in *Florence*, the covenants not to compete in the sale and employment agreements "deal in very similar, but not precisely the same, manner with the same subject matter." 358 Mass. at 55, 260 N.E.2d at 736. We take the three-year covenant of the employment agreement, which is specific to Green, as the only covenant applicable to him. If the parties had intended Green to be an "affiliated person" under paragraph 8.0's ten-year covenant, the three-year covenant would have been unnecessary. *Cf. Florence, id.* at 56, 260 N.E.2d at 736 ("We are not persuaded that each of these provisions was to operate independently of the other, or that each had any significant separate business purpose.").

What is more, the employment agreement's covenant, in placing a three-year limit on competition by Green, implies that he would be free to compete at the conclusion of the three-year term. That right would be nugatory if its exercise compelled GTA's forfeiture of $100,000, under paragraph 8.0's ten-year covenant. We cannot believe that the parties intended such an implausible result, particularly when we consider the contract as a whole, "the circumstances and background of its negotiation and execution," and its purpose. *See East Coast Aviation Corp. v. Massachusetts Port Auth.*, 346 Mass. 699, 704–05, 195 N.E.2d 545, 548 (1964). "[W]e cannot ignore the basic rule of construction that we must give effect to the parties' intentions and construe the language to give it

reasonable meaning wherever possible." *Shea v. Bay State Gas Co.*, 383 Mass. 218, 224–25, 418 N.E.2d 597, 601 (1981). To avoid a repugnancy between the employment and sale agreements, we must conclude that Green's conduct was governed only by the three-year covenant in which he was specified, and that the ten-year covenant referred to others when it barred competition by "affiliated persons." Of course, the issue whether Green breached the covenant not to compete in his employment agreement is not before us.

Given our understanding of paragraph 8.0, which does not depend on who drafted the sale agreement, we need not consider plaintiff-appellant's contention that the district court erred in assuming that Simonson was the drafter. Moreover, contrary to Simonson's suggestion, it is not necessary to consider further evidence of the parties' intentions, since we find paragraph 8.0—in conjunction with the employment agreement—unambiguous. *See Robert Indus., Inc. v. Spence*, 362 Mass. 751, 756, 291 N.E.2d 407, 410 (1973). "[T]he parol evidence rule bars giving effect to any agreement not contained in the integrated writings," and extrinsic evidence that Green's conduct was barred by paragraph 8.0 would only "put an 'impossible strain' on the words used." *Thomas v. Christensen*, 12 Mass.App. 169, 176, 422 N.E.2d 472, 477 (1981).

To defeat GTA's and Simon's motion for summary judgment, Simonson was required to "establish the existence of an issue of fact [that was] both 'genuine' and 'material'." *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). While the meaning of paragraph 8.0 is a material issue, it is not a genuine issue. "[L]ook[ing] at the record in the light most favorable to, and indulg[ing] all inferences in favor of [Simonson]," we conclude, nevertheless, that no "further exploration of the facts is really necessary." *Packish v. McMurtrie*, 697 F.2d 23, 27 (1st Cir.1983) (per curiam).

## III

For the foregoing reasons, the judgment of the district court is affirmed.

Affirmed.