Agnes, A.J.
BACKGROUND
This is a civil action in which the plaintiff, Kay Construction Company (“plaintiff’) has brought suit against defendant, Control Point Associates, Inc. (“Control Point”) for breach of contract, negligence, indemnity for losses, and unfair practices under G.L.c. 93A, §11. Also, the plaintiff brought suit against defendant, Bohler Engineering, PC and defendant, Ludwig C. Bohler for indemnity for losses, as well as unfair practices under G.L.c. 93A, §11. Furthermore, the plaintiff brought suit against defendant, Security Insurance Company of Hartford (“Security”) for unfair practices under G.L.c. 93A, §§9, 11. The defendants deny all the allegations set forth in the plaintiffs complaint.
At this phase of the case, the plaintiff is seeking partial summary judgment for the issue of liability against Control Point for Count I, breach of contract, and Count II, negligence. Conversely, Security is seeking dismissal of Count V, unfair practices under G.L.c. 93A, §9, in addition to a stay of the proceeding for Count VI, unfair practices under G.L.c. 93A, §11.
FACTS
The plaintiff is a general contractor that had a contract with ESA Services, Inc. to build an Extended Stay America Hotel on Andover Street in Tewksbury, Massachusetts. The contract was effective April 17, 2000, and contained various “milestones” where a specific amount of the work was to be completed. Two of these “milestones” were deemed “substantial completion phases.” The first phase was to be completed 180 days from the date of commencement, while the second phase was to be completed 210 days from the date of commencement. Plaintiffs Exhibit, Tab 1 Page 4. The contract also contained a liquidated damages clause that would impose a daily $2,000 tine for each day final completion of the project was delayed. Plaintiffs Exhibit, Tab 1 Page 3.
It is hereby ORDERED pursuant to Mass.R.Civ.P. 53 and Superior Court Rule 49 an Order of Reference shall issue appointing a master to be paid by the parties to perform the accounting. If the parties are unable to agree upon a master within fifteen (15) days of receipt of this order, I shall appoint one. The master shall determine: (1) the gross profit to NAIS from the sale of Shimadzu equipment to York Hospital and deduct the reasonable expenses to arrive at the net income to the joint venture; (2) the salvage value of the loaner Alpha Review Station; (3) the additional expense, if any, incurred because Ray Tek was not on site during some of the installation of the cardiac cath lab; and, (4) the value of the service contract for the eight years of the contract excluding the two years under warranty less the expense or projected expense incurred by NAIS in the actual servicing of the equipment. Equipment listed on the sales contract but paid directly to the supplier or manufacturer by the Hospital shall not be included in the calculations.
The plaintiff hired subcontractor Control Point to provide professional land surveying services in conjunction with the ESA project. On August 21, 2000, Michael Collentro, the plaintiffs project manager, signed Control Point’s proposal (dated August 17, 2000) to provide land surveying for the plaintiff. Plaintiffs Exhibit, Tab 2A. Shortly thereafter, Paul Jurkowski of Control Point performed the requested surveying at the project site. He set the “survey points” for where the foundation was to be built, and provided the plaintiffs site supervisor, Raymond DeVita, with a field plan of the site. Plaintiffs Exhibit, Tab 6, Tab 6A. DeVita specifically requested that the “survey points” be off-set by 50 feet from where the foundation was to actually be located. This was requested so the plaintiff could adequately excavate the site and build the foun *204 dation in accordance with the zoning by-laws of the Town of Tewksbury. Plaintiffs Exhibit, Tab 6, Tab 11. The plaintiff requested that Control Point return to the site post-excavation in order to restore and adjust “survey points” that may have been disturbed during the excavation process, which Control Point did on August 29, 2000. Upon Control Point’s resurvey of the site, the plaintiff commenced construction of the foundation on September 15, 2000. Shortly thereafter, Control Point returned to the site in order to perform the “as-built survey.” Collentro and DeVita both noticed after reviewing the “as-built” plan that the foundation encroached on the “front and left side zoning set-backs.” Plaintiffs Exhibit, Tab 6, Tab 10. An independent survey conducted by Kevin Hinds of the Engineering Design Consultants, Inc. confirmed that the foundation was in violation of the zoning by-laws, and in his estimation the violations were a result of miscalculations made by Control Point in the formulation of the field plan. Plaintiffs Exhibit, Tab 9.
In light of the liquidated damages clause the plaintiff determined that it would be in their best interests to raze the foundation, and reconstruct it at the correct location in accordance with the zoning by-laws of the Town of Tewksbury. Control Point admits that it requested the plaintiff to refrain from razing the foundation, and instead attempt to obtain a variance from the Tewksbury Zoning Board that would enable the foundation to remain in its improper location. Plaintiffs Exhibit, Tab 3 Pages 3-4; Defendant’s Answer. The plaintiff obliged Control Point’s request, but their application for a variance was ultimately denied. Plaintiffs Exhibit, Tab 13. The plaintiff was forced to suspend construction on the project, and rebuild the foundation. Thus, the plain tiff had difficulties fulfilling the time requirements in its contract with ESA, and suffered harm as a result. Plaintiffs Complaint, Factual Allegations.
DISCUSSION
“Summary judgment is a ‘device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved.’ ” Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983) (citations omitted). The function of a motion under Mass.R.Civ.P. 56, is to “pierce the boilerplate of the pleadings and assay the parties’ proof in an effort to determine whether trial is actually required.” Harris v. Harvard Pilgrim Health Care, Inc., 20 F.Supp.2d 143, 146-47 (D.Mass. 1998), citing McIntosh v. Antonino, 71 F.3d 29, 33 (1st Cir. 1995). Thus, summary judgment should be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). Also, summary judgment may be granted against the moving party, and may be granted as to certain issues but not others. See Community Bank v. Dawes, 369 Mass. 550, 553 (1976).
The moving party bears the burden of establishing the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once this is satisfied, the burden shifts to the party opposing summary judgment to allege specific facts establishing the existence of a genuine issue or issues of material fact. Id. In assessing whether each party has met its burden, the court is not permitted to weigh the evidence, to determine the credibility of any witnesses or make any findings of fact. Kelly v. Rossi, 395 Mass. 659, 663 (1985). Moreover, “[t]he evidence is ‘considered with an indulgence in the [opposing party’s] favor.’ ” Anthony's Pier Four v. Crandall Dry Dock Engineering, Inc., 396 Mass. 818, 822 (1986), quoting National Ass’n of Gov’t Employees v. Central Broadcasting Corp., 379 Mass. 220, 231 (1979), cert. denied, 446 U.S. 935 (1980). However, “[a] complete failure of proof concerning an essential element of the non-moving party’s case renders all other facts immaterial.” Kourouvacilis, supra at 711, citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
In determining whether there are genuine issues of material fact, the court may consider the pleadings, depositions, answers to interrogatories, admissions on file and affidavits. Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The party opposing summary judgment cannot defeat the motion simply by resting on the pleadings and mere assertions that there are disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). If the moving party does not bear the burden of proof at trial, it may demonstrate the absence of a genuine issue of material fact by submitting evidence that negates an essential element of the other party's claim, or by showing that the other party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
Counts I and II
The plaintiff asks this court to grant partial summary judgment on the issue of liability against the defendants for the breach of contract claim (Count I) and for the claim of negligence (Count II). The defendants did not submit a substantive opposition to the plaintiffs motion. Rather, they submitted a request for further discovery pursuant to Mass.R.Civ.P., Rule 56(f).[1] The defendants argue a need to depose the plaintiff in order to obtain “information regarding the construction of the foundation.” It is further argued by the defendants that this information is “necessary for the defendants to refute [the plaintiffs] motion for partial summary judgment.” Defendants’ Opposition, Page 2.
“When a party opposes a motion for summary judgment but is not able to present a sufficient afflda *205 vit in opposition because the necessary facts or evidence are possessed or controlled by the moving party, Rule 56(f) is the only remedy available to the opposing party. In considering the Rule 56(f) motion, the court has discretion whether to afford relief.” Orix Credit Alliance, Inc. v. Madden, 1992 Mass.App.Div. 92, 99 (1992), citing A. John Cohen Insurance Agency, Inc. v. Middlesex Insurance Company, 8 Mass.App.Ct. 178 (1979); Blake Brothers Corporation v. Daniel F. Roche & another, trustees, 12 Mass.App.Ct. 556 (1981).
Negligence Claim
“Summary judgment is seldom sought or granted in negligence actions.” Manning v. Nobile, 411 Mass. 382, 388 (1991), quoting Inferrera v. Sudbury, 31 Mass.App.Ct. 96, 103 (1991). See Roderick v. Brandy Hill Co., 36 Mass.App.Ct. 948, 949 (1994), citing Mullins v. Pine Manor College, 389 Mass. 47, 65 (1983); Solimene v. B. Gravel & Co., KG, 399 Mass. 790, 794 (1987). This is because the jury is uniquely qualified to apply the reasonable person standard to the facts. See Foley v. Matulewicz, 17 Mass.App.Ct. 1004, 1005 (1984) (rescript). However, “judicial reluctance to grant summary judgment in negligence actions should not preclude entering such judgment in appropriate cases.” McNamara v. Massachusetts Port Authority, 30 Mass.App.Ct. 716, 718 n.3 (1991).
The plaintiffs motion for summary judgment to establish the defendants’ liability on the claim of negligence must be allowed because there is no genuine issue of material fact. Control Point was hired by the plaintiff to provide “professional land surveying services,” which consisted of setting “survey points” that the plaintiff would rely on in laying the hotel foundation. Plaintiffs Exhibit, Tab 2A Page 1, Tab 6 Page 3. Control Point was bound to provide these services “in a manner consistent with that level of care and skill ordinarily exercised by comparable professional firms under similar circumstances . . .” Plaintiffs Exhibit, Tab 2A Page 5. Control Point set the “survey points” and provided the plaintiff with a field plan that mapped out these points. Plaintiffs Exhibit, Tab 6A. The plaintiff then proceeded to excavate the area in preparation for laying the foundation. Once the site was excavated the plaintiff requested that Control Point return to the site and ensure that the “survey points” were correctly positioned pursuant to the field plan. Control Point returned to the site, made the necessary adjustments to the “survey points,” and determined that the plaintiff could lay the foundation. Plaintiffs Exhibit, Tab 6 Pages 3-4. Once the foundation was laid, Control Point returned to the site in order to prepare the "as-built plan” for the plaintiff. The plaintiffs Site Supervisor, Raymond DeVita received the “as-built plan,” and immediately noticed that the foundation “encroached on the front and left-side minimum zoning set-backs,” in violation of zoning by-laws of the Town of Tewksbury. Plaintiffs Exhibit, Tab 6 Pages 4-5, Tab 7. Control Point confirmed the error in a re-survey of the site, as did an independent survey of the site conducted by Kevin Hinds of Engineering Design Consultants, Inc. Plaintiffs Exhibit, Tab 6 Page 5, Tab 8, Tab 9.
There is no reason to believe that a deposition of the plaintiff would uncover disputed facts necessary to defeat the plaintiff s motion. See Commonwealth v. Fall River Motor Sales, 409 Mass. 302, 308-09 (1991). The plaintiff hired Control Point to provide professional surveying. Control Point performed its work and provided the field plan used in reliance by the plaintiff. The later “as-built plan,” an accurate depiction of where the foundation was laid, is directly on point and consistent with the field plan. These plans were flawed, because of miscalculations made by Control Point. These errors were confirmed after the fact by Control Point and also by an independent surveyor. Plaintiffs Exhibit, Tab 6, Tab 9 Page 4. The plaintiff constructed the foundation in accordance with Control Point’s flawed work, and as a result was harmed because of the fines built into the plaintiffs contract with ESA. The defendants’ desire to depose the plaintiff in regard to the plaintiffs construction of the foundation is based on a hunch that some evidence of comparative negligence maybe exposed. Such a deposition would be nothing more than a “fishing expedition.” This is not the purpose that Mass.R.Civ.P. 56(f) was designed to serve. If the plaintiff cannot rely on the field plan, then what is the purpose of making such a plan?
Breach of Contract Claim
The defendant, Control Point, promised in their proposal to “stakeout the field of the proposed building in accordance with [the plaintiffs] structural and architectural plans.” Plaintiffs Exhibit, Tab 2A Page 1. Furthermore, Control Point agreed to perform its service “in a manner consistent with that level of care and skill ordinarily exercised by comparable professional firms under similar circumstances ...” Plaintiffs Exhibit, Tab 2A Page 5. Michael Collentro, in his capacity as Project Manager for the plaintiff, accepted in writing the terms and conditions of the defendant’s proposal. Plaintiffs Exhibit, Tab 2A Page 3.
As previously discussed, Control Point provided the plaintiff with a flawed plan that the plaintiff reasonably relied upon in its construction of the foundation. The plaintiff was harmed as a result of this reliance. Again, the plaintiff has produced an overwhelming amount of evidence that makes it unlikely that a deposition of the plaintiff would produce any genuine issue of material fact on the issue of liability for the breach of contract claim. Therefore, summary judgment on the issue of liability must be granted.
The defendants argue that under the Anthony’s Pier Four v. Crandall Dry Dock Engineers case “no contract claim lies where there has been no express warranty or promise of a specific result.” Anthony’s Pier Four, 396 Mass. 818, 823 (1986). However, the Massachu *206 setts Appeals Court in footnote 5 of the Melrose Housing Authority v. New Hampshire Insurance Company deemed such a reading of the Anthony’s Pier Four case to be too expansive.[2] Melrose Housing Authority, 24 Mass.App.Ct. 207, 211 n.5 (1987).
Count V
The defendant, Security, moves to dismiss Count V of the plaintiffs complaint alleging that Security violated G.L.c. 93A, §9 and G.L.c. 176D causing the plaintiff actual harm. G.L.c. 93A, §2(a) prohibits “. . . unfair or deceptive acts or practices in the conduct of any trade or commerce . . G.L.c. 93A, §9 allows “any person, other than a person entitled to bring action under section eleven of this chapter, who has been injured by another person’s use or employment of any method, act or practice declared to be unlawful by section two ...” Furthermore, “Any person whose rights are affected by another person violating the provisions of G.L.c. 176D, §3(9)’’ may bring an action under §9. On the other hand, G.L.c. 93A, §11 pertains to “any person who engages in the conduct of any trade or commerce and who suffers any loss of money . . . as a result of the use or employment by another person who engages in any trade or commerce of an... unfair or deceptive act or practice declared unlawful by section two ...”
The plaintiff is a “corporation duly organized and existing under the laws of the Commonwealth of Massachusetts,” and is "in the business of general contracting.” The defendant is an insurance company that is registered with the Massachusetts Commissioner of Insurance. Plaintiffs Complaint, Pages 2,3. Therefore, the plaintiffs claim under G.L.c. 93A, §9 must be dismissed, because a plaintiff business is barred from bringing a consumer protection claim against an insurance company under §9, when the claim asserted is based on conduct covered in §11. See DiVenuti v. Reardon, 37 Mass.App.Ct. 73 (1994). The G.L.c. 176D, §3(9) claim attached to Count V by virtue of G.L.c. 93A, §9 is also dismissed. Furthermore, a G.L.c. 176D, §3(9) claim is unavailable to a plaintiff business under G.L.c. 93A, §11.
Count VI
The defendant moves to stay Count VI of the plaintiffs complaint alleging that all named defendants violated G.L.c. 93A, §11 by conducting unfair and deceptive business practices causing the plaintiff actual harm.
It is appropriate to fashion protective orders in cases where a G.L.c. 93A claim against an insurer are premature until its insured has been found liable. See Beleher v. Pawtucket Mut. Ins. Co., Appeals Court No. 89-J-672 (September 27, 1989) (Kass, J.); Gross v. Liberty Mutual Ins. Co., Appeals Court No. 84-0138 (April 24, 1984). However, in this case, the insured is deemed liable as a result of the court’s ruling on the plaintiffs motion for partial summary judgment. Therefore, a G.L.c. 93A claim against the insurer is not premature, and thus the Defendant’s motion to stay Count VI must be denied.[3]
ORDER
For the above stated reasons, partial summary judgment is ordered in favor of the plaintiff on the issue of liability on Counts I and II of the plaintiff s complaint. I also find that dismissal of Count V in the plaintiffs complaint is warranted. Furthermore, I find that the defendant’s motion for a stay of Count VI in the plaintiffs complaint is unwarranted.
Therefore, the Plaintiffs motion for summary judgment is ALLOWED. Count V of the plaintiffs complaint is DISMISSED. And the Defendant’s motion for a stay of Count VI is DENIED.

Mass.R.Civ.P., Rule 56(f) provides: “Should it appear from affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discoveiy to be had or may make such order as is just.”

Furthermore, the defendants’ argument that the plaintiffs contract claim is merely a professional malpractice claim that sounds in tort is moot. In light of this court’s ruling on the issue of negligence, summary judgment in favor of the plaintiff on the issue of liability would still be appropriate even if Count I was tort based rather than contract based.

It must be noted that the plaintiff has been careful not to pursue discoveiy from the defendant bringing this motion (Security). Therefore, even if liability of the Insured had not been established, the issuance of a stay for Count VI would have been premature.